**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Hector FUENTES–MONTIJO and Ruben Campoy–Silva Defendants–Appellants.**

Nos. 94–10453, 94–10469.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 17, 1995.

Decided Oct. 19, 1995.

Sean Bruner, Bruner & Bowman, Tucson, Arizona, and Hector M. Figueroa, Figueroa & Associates, Tucson, Arizona, for defendants-appellants.

David A. Kern, Assistant United States Attorney, Tucson, Arizona, for plaintiff-appellee.

Before: D.W. NELSON, T.G. NELSON, Circuit Judges, and KING,* District Judge.

## OPINION

T.G. NELSON, Circuit Judge:

Hector Fuentes–Montijo (Fuentes) and Ruben Campoy–Silva (Campoy) appeal their jury convictions on the ground that the district court abused its discretion in instructing the jury on the use of English translation transcripts of Spanish language tape recordings. We hold that the district court did not abuse its discretion.

## FACTS AND PROCEEDINGS

On November 17, 1993, a superseding indictment was filed charging appellants and codefendants with conspiracy to possess cocaine with intent to distribute from approximately June 1992 through August 6, 1993. They were also charged with possession with intent to distribute cocaine from July 29 through August 6, 1993. Campoy was further charged with possession with intent to distribute cocaine on June 16, 1992. A criminal forfeiture count was alleged against Fuentes only. Fuentes and Campoy were convicted by the jury and later sentenced.

During the trial, informant Carlos Gutierrez testified about the time period beginning in September 1992, when he met with Fuentes to try to get him to move 800 kilograms of cocaine. In December 1992, the DEA met with Gutierrez and began to focus on Fuentes through Gutierrez. Over the next year, under DEA supervision, Gutierrez made several recordings of his conversations and meetings with the defendants and several of their co-defendants. From February 1993 until July 1993, Gutierrez made a number of attempts to buy cocaine from Fuentes. At one point, Fuentes told Gutierrez that he was waiting for a ten ton shipment of cocaine from Mexico. No cocaine was produced.

In August 1993, Gutierrez and the defendants arranged a deal moving 180 kilograms of cocaine. On August 6, after two exchanges of money and a total of some eleven kilos of cocaine, Fuentes and Campoy were arrested. At the time of his arrest, Fuentes had in his possession one of the $100 bills which the DEA had used to purchase the first kilo of cocaine.

## INSTRUCTIONS TO THE JURY ON TAPES/TRANSLATION TRANSCRIPTS

Gutierrez recorded a number of his conversations with Fuentes and Campoy. The district court admitted into evidence the tapes which were in Spanish, as well as transcripts of the tapes translated into English. The parties stipulated that the certified court interpreter "reviewed all transcripts admitted into evidence and has certified them to be true and accurate English translations of the Spanish tapes." The tapes were played for the jury and they read the transcripts simultaneously, although no one told them at what point to turn the pages.

Initially the court instructed the jury that the tape recordings were the primary evidence and the best evidence of the conversations, and that the transcripts were simply guides to the tape recordings. During the sixth day of trial, however, the court modified the instruction and informed the jury that:

> I previously instructed you that the recordings, and not the transcripts, are the evidence. I want to correct that at this time. The transcripts have been certified by a federally certified court interpreter. While in a case involving English conversations which have been recorded, the jury is routinely instructed that they are not bound by the transcript, that is because every juror is just as capable as the person preparing the transcript to tell what is being said on the recording. This is not so with the recorded Spanish conversations that have been introduced in this case. Accordingly, I am now instructing you that

---

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

the transcripts are guides prepared for you so that you can understand the Spanish language recordings. You are not free to reject the accuracy of the interpretation of the tape recordings differently than the interpretation given by the certified court interpreter in the transcripts.

■ "Where there is no dispute as to accuracy, we review for abuse of discretion the district court's decision to allow the use of wiretap transcripts during trial and to permit such exhibits into the jury room." *United States v. Pena–Espinoza,* 47 F.3d 356, 359 (9th Cir.1995) (citing *United States v. Taghipour,* 964 F.2d 908, 910 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 283, 121 L.Ed.2d 210 (1992)). "A nonconstitutional evidentiary error will be reversed for an abuse of discretion only if the court's ruling more likely than not affected the verdict." *Id.* (brackets and internal quotations omitted).

■ Appellants contend that the district court violated due process and abused its discretion in instructing the jury that they were not free to disagree with the translation contained in the transcripts instead of treating the translations in the same manner as any expert testimony. Appellants rely on the longstanding rule that the tapes themselves are the primary evidence. Their main attack here is on the numerous inaudible portions of the tapes: "[W]hen the tapes are difficult to hear and decipher, what is actually on the tape is always open to interpretation.... Jurors are always free to reject expert testimony or give it whatever weight they wish." They also point out that the recordings contained a lot of slang and that Gutierrez admitted on cross-examination that his Spanish-speaking ability was poor.

The Government responds that to instruct an English-speaking jury to consider the Spanish-language tapes controlling when they conflicted with the English translation transcript "would have been an exercise in sheer folly." It further argues that any Spanish-speaking jurors could then improperly influence the English-speaking jurors. The Government also places great emphasis on the stipulation, which it characterizes as a stipulation to the accuracy of the transcript.

The appellants argue that the stipulation allowing the use of the transcripts and the certified court interpreter's opinion that they were accurate "was never an admission to the accuracy of the tapes."[1] Although this stipulation may well not have been a stipulation to the accuracy of the transcript, the appellants, aside from noting Gutierrez's poor Spanish and the slang on the tapes, never pointed to any particular inaccuracies. When the court and the parties addressed a juror note about the tape/transcript, the court observed that: "A translation was prepared, an opportunity was given to object. And as I said, it was not a lengthy opportunity, but I am certain that counsel could always move to reconsider had they found something really amiss regarding the translations." No such motion was ever made.

In *United States v. Taghipour,* 964 F.2d 908 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 283, 121 L.Ed.2d 210 (1992), tapes of conversations which were part in Farsi and part in English were played for the jury. *Id.* at 909. "The jury was also given a transcript of the tape in which the Farsi was translated into English and the English was merely transcribed." *Id.* The parties had stipulated to the accuracy of the transcription and the translation. The jury was instructed that for the portion of the tape that was in English, the tape was the evidence,

1. "[Attorney Bruner, for Fuentes]: What we stipulated to, Judge—and now I wish I hadn't. I had just walked into the case at the time that this came down. But all we had stipulated to was the fact that [the interpreter] would not have to come in to make the certification ... the foundation of those transcripts. We never agreed that this was an accurate transcription. We never agreed that there was no question as to what was on the tape. All we agreed to was that she didn't have to come into court and

say: 'Yes, I am a certified interpreter, and yes, these are my interpretations of these tapes,' because overall I have not that much quarrel with her. But I do have quarrels with her in the particulars. And especially when you have a witness like Carlos Gutierrez who, as he admitted under my cross examination, doesn't speak that good Spanish.... [M]y understanding is the reason we [stipulated] is because [the AUSA] was claiming that [the interpreter] was not going to be available."

and for the portion of the tape in Farsi, the transcript was the evidence. *Id.* On appeal, the defendant did not contest the jury instruction, but instead argued that the court erred in allowing the jury to use an unredacted transcript. *Id.* at 910. This court found no abuse of discretion because the defendant did not question the accuracy of the transcript and made no showing of prejudice. *Id.*

The district court's instruction in this case is therefore not unprecedented,[2] but has never been ruled upon by this court. In prior cases involving the use of translated transcripts, great emphasis has been placed on the need for a showing by the appellants that the transcripts were inaccurate and that they were prejudiced by the use of the transcripts. *Pena–Espinoza,* 47 F.3d at 360 (no showing that transcripts were "substantially inaccurate"); *United States v. Armijo,* 5 F.3d 1229, 1234–35 (9th Cir.1993) (no showing at trial that translation was inaccurate); *Taghipour,* 964 F.2d at 910 (parties stipulated to accuracy; no showing of prejudice); *see also United States v. Font–Ramirez,* 944 F.2d 42, 48 (1st Cir.1991) ("Because [appellant] did not offer an alternative transcript and did not point out any specific inaccuracies in the government's transcript, the district court was within its discretion in allowing its use."), *cert. denied,* 502 U.S. 1065, 112 S.Ct. 954, 117 L.Ed.2d 122 (1992). In this case, as in *Pena–Espinoza,* the court is "left with largely conclusory allegations of possible inaccuracy and no indication that the court's ruling likely affected the jury's verdict." 47 F.3d at 360.

Defense counsel was given the opportunity (although apparently a very brief one) to challenge the translation prepared prior to trial and could have filed a motion to reconsider, as mentioned by the district court. The defense may not have stipulated to the accuracy of the actual translation, but it did stipulate away the opportunity to cross-examine the court interpreter regarding the inaudible portions of the tapes, Gutierrez's Spanish-speaking ability, and the use of slang in the tapes.

When, as here, a district court is faced with a jury that includes one or more bilingual jurors and the taped conversations are in a language other than English, restrictions on the jurors who are conversant with the foreign tongue is not only appropriate, it may in fact be essential. Where the translation of a portion of the tape is disputed, both sides have an interest in what information is given to the jury. The rules of evidence and the expert testimony would prove of little use if a self-styled expert in the deliberations were free to give his or her opinion on this crucial issue, unknown to the parties.

In this case, the defense now complains of the way the tapes and transcripts were handled. But in the next case, it may well be the defense which is concerned about uncontrolled opinion evidence going to the jury on a critical translation issue. When faced with a taped conversation in a language other than English and a disputed English translation transcript, the usual admonition that the tape is the evidence and the transcript only a guide is not only nonsensical, it has the potential for harm where the jury includes bi-

---

**2.** *See also United States v. Cruz,* 765 F.2d 1020, 1023 (11th Cir.1985), in which the district court instructed the jury that: "What was said at the time it was recorded is what the real evidence is, the transcripts are not. They are merely to help you identify. But in this situation where we have a foreign language tape they also inevitably provide you content of the conversation as well." The Eleventh Circuit held that the English transcript of Spanish conversations was properly admitted and considered by the jury as substantive evidence because of the following factors: (1) the limiting instruction; (2) the fact that the court played the tape for the jury and had an interpreter signal when to turn the pages; and (3) the court's assurance that it would only provide the transcript or the tape to the jury for its deliberations upon the jury's request. *Id.* at 1024. A

similar instruction was given in *United States v. Bahadar,* 954 F.2d 821, 830 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 149, 121 L.Ed.2d 101 (1992). The tape-recorded conversations in that case were a mixture of English and two Pakistani dialects. The court had portions of the translated transcript read to the jury and played certain portions of the tapes to the jury. While the Second Circuit did not rule directly on the propriety of the instruction, it held that "[w]hile the general, and preferred, practice in dealing with tape-recorded evidence is to play the tapes and allow transcripts only as an aid, we do not believe that [the judge] abused his discretion by utilizing the procedures that he did, especially since the tapes were mostly in foreign tongues...." *Id.*

lingual jurors. As the Second Circuit said in *Bahadar*, it is "hard to imagine any other proper and effective handling of this evidence." *Id.* at 831. The district court's actions and instructions here were well within its discretion.

## CONCLUSION

The modified jury instruction in this case was within the discretion of the district court. The defense has failed to make a sufficient showing of prejudice to warrant a reversal.

All other issues raised on appeal have been addressed in the Memorandum Disposition filed herewith.

AFFIRMED as to Fuentes in all respects; Campoy's conviction on Count 3 (possession with intent to distribute on June 16, 1992) is REVERSED and REMANDED for further proceedings; Campoy's convictions on Counts 1 and 4 are AFFIRMED.