THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TEODORO CARMONA-OLVARA, Defendant-Appellant.

First District (6th Division)    No. 1—04—0693

Opinion filed December 30, 2005.

Carli D. Fish, Theodore W. Pannkoke, and Maya Hoffman, all of Cozen O'Connor, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

We do not often need to look back 150 years for authority to guide our resolution of an appeal, but when an old case provides the best guidance, we will not hesitate to use it. In this case the prosecutor, who charged defendant Teodoro Carmona-Olvara with burglary and arson, introduced into evidence a police officer's translation of a statement defendant made in Spanish. Defendant sought to introduce evidence that the officer mistranslated the statement. The court disallowed the evidence. The best authority we found for resolving this appeal comes from a case our supreme court decided in 1859. The court held that a defendant in a criminal trial has a right to present evidence that an interpreter mistranslated evidence from a foreign language. Because we find the trial court's error here prejudiced defendant, we reverse and remand for a new trial.

## BACKGROUND

Around 1 a.m. on March 10, 2003, Officer Victor Perez arrested defendant near the corner of 30th and Pulaski in Chicago. Police then contacted Juan Luis Reyes Miranda and asked him to identify his car. Reyes found that his car, parked on the 2800 block south on Pulaski, had suffered fire damage. Officers showed Reyes some tools in a police car. Reyes told police that he owned the tools, and he had kept them in his car. Police charged defendant with the arson and burglary of Reyes's car.

At trial the court provided defendant with an interpreter to translate all proceedings into Spanish. The court asked the parties how long they expected the trial to take. The prosecutor thought two hours for the presentation of his case would suffice, so he hoped to complete the entire trial, including jury selection, in a single day. Defense counsel said he had confidence the trial would end no later than the day following its start. The court so informed the venire. Jury selection took the entirety of the first day of trial, and the prosecution began the presentation of its case late the next morning.

Reyes identified photographs showing fire damage to his car and his tools. He did not know defendant and he did not give defendant permission to enter the car. He normally locked his car. He saw no indication of forced entry into the car. His brother, who lived on the 2800 block south on Pulaski, had keys to the car.

Officer Perez testified that a little after 1 a.m. on March 10, 2003,

he saw someone in Reyes's car lighting something. He saw defendant exit the car and he saw flames rising in the car. Defendant ran south on Pulaski. Perez's partner went to the burning car while Perez chased defendant, who never left Perez's sight between the time he left the car and the arrest. According to Perez, the tools Reyes identified in court fell out of defendant's jacket when Perez grabbed him. He found more of Reyes's tools when he frisked defendant. He put all of the tools in the police car and showed them to Reyes.

On cross-examination Perez admitted that when he arrested defendant he found no tools for entering locked cars. Perez also admitted that at a preliminary hearing he testified that he saw defendant get out of the car first, and then he saw defendant light something and drop it into the car.

Perez's partner corroborated the trial testimony, saying he, too, saw flames before he saw defendant get out of the car. Perez's partner called the fire department, but he managed to put out the fire before an engine arrived. He saw no signs of forced entry into the car.

Defendant, who immigrated from Mexico to the United States in 2000, testified that he lived near 32nd and Pulaski. A little before midnight on March 9, 2003, he walked to a gas station at 28th and Pulaski to buy some donuts and juice. On his way home, not far from the gas station, a man robbed him of $380 in cash, but left him his wallet and cell phone. Once the robber left, defendant called police. An officer arrived about 15 minutes later. Defendant told him about the robbery. The officer offered to take defendant home, but defendant chose to walk. The prosecutor stipulated that telephone records showed that defendant called police on his cell phone about an hour before his arrest.

Defendant testified that when he reached 30th and Pulaski, about midway between the gas station and his home, Perez and his partner arrested him and took him in their patrol car. Defendant had not seen any car burning, he never saw any tools, and he did not take anything from any car on his way home.

On cross-examination defendant admitted that he spoke with Perez in Spanish following the arrest. The prosecutor asked:

"[H]e asked you why did you burn the car. ***

***

*** Do you recall telling Officer Perez I don't know, I just did it?"

Defendant answered, "I told him I do not know anything."

At the instruction conference at the close of defendant's case in chief, defense counsel sought an instruction concerning prior inconsistent statements, to direct the jury to consider Perez's cred-

ibility in light of the conflict between his testimony at trial and his testimony at the preliminary hearing. This colloquy followed:

"[Defense counsel] MR. STAHL: Judge, there is an I.P.I. *** with regard to prior inconsistent statements that we would ask to be given.

THE COURT: Where is it?

MR. STAHL: I can go and prepare it. I've not yet prepared it.

THE COURT: We're going to jury. If you don't have it now, it's not going to be given.

MR. STAHL: I'll go up and get it.

THE COURT: *** It's almost 4:00. We're going to finish the case and argue to the jury.

MR. STAHL: All right, Judge. I'll write it out.

THE COURT: I'm not going to accept it written out. ***

MR. STAHL: Can I go back to your office and use your computer to print it out?

THE COURT: We're not going to take time to do it. If you don't have it here now, I am not going to give it.

MR. STAHL: You won't wait five minutes?

THE COURT: No, I will not wait five minutes, okay?

* * *

MR. STAHL: I'd also like the record to reflect I received the State's instructions approximately five seconds before the instructions conference began.

* * *

I would ask the record to reflect we finished the instruction conference at 3:50 p.m..

THE COURT: Fine."

In rebuttal Perez said that he asked defendant in Spanish why he started the fire in the car. Perez testified, "He related to me in Spanish that I don't know. I just did it." On cross-examination defense counsel asked Perez to repeat the exact Spanish words defendant used. The transcript shows that Perez spoke in Spanish, and the court reporter did not attempt to transcribe the Spanish. Perez testified that he translated the Spanish as "I don't know why; I just did it." Perez did not ask defendant to write out or sign any document reflecting this admission.

Defendant sought to call an interpreter in surrebuttal. The court disallowed the witness. Counsel made an offer of proof:

"[In] the context of the Spanish language *** that doesn't mean I don't know, but I did it, it just means I don't know anything about it. So, it would have been a denial ***.

* * *

*** [I]t's explaining the meaning of the words. In the transla-

tion, words are not always translated word for word ***. It's what they are told in context."

The court reiterated its ruling disallowing the testimony.

The jury quickly returned a verdict, finding defendant guilty of burglary and arson. The court completed the trial in the promised two days. In his posttrial motion defendant emphasized the refusal to permit the interpreter to contest Perez's translation of defendant's statement and the rejection of the instruction concerning inconsistent testimony. The court denied the motion and sentenced defendant to concurrent three-year terms on the charges.

## ANALYSIS

On appeal defendant again challenges the court's decision not to permit an interpreter to contest Perez's translation of defendant's statement to him. Our supreme court's opinion in *Schnier v. People*, 23 Ill. 11 (1859), guides our consideration of the issue. In *Schnier*, the principal witness in a prosecution for murder testified through an interpreter because he spoke only German. The witness saw the defendant arguing with the victim and he saw the victim fall with blood running from his nose. The witness asked the defendant what he had done. According to the interpreter, the answer the defendant gave, as the witness reported it, meant: " 'the stroke was rather hard, but he was sorry for it.' " *Schnier*, 23 Ill. at 22. The trial court permitted the witness to explain, through the interpreter, that the German word the defendant used meant a "blow." *Schnier*, 23 Ill. at 22.

The defendant sought to introduce testimony from another German speaker that the German answer the witness reported meant, instead, the "fall" was rather hard. *Schnier*, 23 Ill. at 22. The trial court disallowed the evidence. The jury found the defendant guilty of manslaughter.

On appeal our supreme court explained:

"The defendant *** offered to prove by a German scholar the meaning of the German word *** as used by accused when speaking to the witness ***.

The object of all evidence is to inform the jury or tribunal to whom the issue is submitted, of all the facts in dispute, precisely as they occurred. *** Hence witnesses are required to detail what the parties did and said. And in detailing conversations, or admissions, the rules of evidence require that, as far as practicable, the language employed by the party should be detailed by the witness. *** [I]t is always desirable that the witness shall, as far as possible, detail to the jury the very same language, in precisely the same connection, in which it was employed by the person using it, otherwise, it will necessarily be merely an accident if the jury obtain the sense in

which it was spoken. When the facts, conversations or admissions, admissible in evidence, are known to a person who does not understand and speak the language in which the trial is conducted, then the only means by which the jury or court trying the issue can arrive at the facts, is from the evidence through an interpreter \*\*\*. \*\*\* [A]n interpreter, if the person employed is not well versed in each language, \*\*\* is liable to fail in giving the jury the facts, circumstances, conversations and admissions just as they were detailed by the witness, and if that is not done, the party against whom the mistake is made must suffer wrong, unless he shall be permitted to call others who are more capable of translating the language accurately. This, we think, is the right of the party. It cannot be the law that because an interpreter is called who is not capable of correctly translating the evidence, or from bias or partiality renders it incorrectly, that parties must be bound by it, although it may affect their most vital and important rights. In this case the witness was permitted to testify as to the sense in which he understood the accused to employ this term, and we can perceive no objection in permitting the accused to introduce evidence of the primary meaning of the word, and its meaning in the connection in which it was used." *Schnier*, 23 Ill. at 22-24.

The court reversed the conviction and remanded for a new trial at which the defendant could present his evidence of the meaning of the words he spoke in the context in which he used them.

While Illinois courts have not often invoked *Schnier*, it appears to remain a correct statement of the law. In *People v. Laures*, 289 Ill. 490, 502 (1919), our supreme court said, "We agree fully with the reasoning of [*Schnier*] on th[e] question" of the need to permit the defendant to present evidence that an interpreter mistranslated testimony. And in *Seniuta v. Seniuta*, 31 Ill. App. 3d 408, 417 (1975), the court cited *Schnier* for the proposition that "An interpreter's account of the answers of a witness need not be literal as long as the answers of the interpreter and the witness amounted to the same thing. [Citations.] There are situations in which he may testify to the sense in which he understands the witness."

Other jurisdictions have adopted the principles stated in *Schnier*. See *United States v. Morales-Madera*, 352 F.3d 1 (1st Cir. 2003); *Kim v. Kim*, 360 F. Supp. 2d 897, 901 n.2 (N.D. Ill. 2005) (accuracy of translation is question for trier of fact to decide based on evidence regarding competing translations); *State v. Burris*, 131 Ariz. 563, 569, 643 P.2d 8, 14 (App. 1982) ("the accuracy of the sworn interpreter's interpretation may be impeached and is ultimately to be determined by the jury.") We follow *Schnier* here.

■ This case involves a real possibility of "bias or partiality"

(*Schnier*, 23 Ill. at 23) affecting the interpreter's translation of defendant's words. Only Officer Perez translated the Spanish defendant spoke to him. As the court stated in *Gonzales v. State*, 372 A.2d 191, 192 (Del. 1977), "there is an inherent possibility of bias *** whenever an arresting police officer is called upon to serve as the defendant's interpreter." Thus, we hold that the trial court erred by excluding evidence of a competing translation of defendant's answer to Officer Perez's question.

The prosecution contends that defendant suffered no prejudice from the exclusion of his interpreter's translation of his response. Perez translated the response as a confession that he "just did it." Defendant's interpreter, according to the offer of proof, translated the same Spanish words as a denial that defendant knew anything about the incident. Confessions carry extreme persuasive weight. *People v. St. Pierre*, 122 Ill. 2d 95, 114 (1988). The evidence against defendant largely depended on the credibility of Officer Perez's testimony. Only Perez saw defendant carrying items taken from Reyes's car. Only Perez claimed to have watched defendant continuously from the time he saw someone lighting something in the car up to the time of the arrest. Neither Perez nor his partner knew defendant before the arrest. We cannot say that the evidence so overwhelmingly favored the prosecution that the exclusion of the alternate translation of defendant's words had no prejudicial effect. Accordingly, we reverse the judgment of the trial court.

■ Defendant argues that we should not remand for a new trial because the prosecution failed to present sufficient evidence to support the convictions. Perez saw defendant in Reyes's car light something and get out of the car. He never lost sight of defendant as he ran from the car down the street. When Perez arrested defendant, Perez found several of Reyes's tools in defendant's possession. According to Perez, defendant confessed to setting the fire in Reyes's car. Reyes testified that he did not give defendant permission to enter his car or to take his tools or to set fire to the car. While the lack of any indication of forced entry casts some doubt on the proof of burglary, we find Perez's testimony sufficient to sustain the convictions. Therefore we remand for retrial on both charges.

■ On remand we expect that defendant will again request an instruction on prior inconsistent statements based on the conflict between Perez's testimony at the preliminary hearing and his testimony at trial. No matter what Perez says at the retrial, his testimony will conflict with either the testimony at the preliminary hearing or the testimony at the original trial. At the hearing Perez said he saw defendant get out of the car, light something on fire, and

drop the flaming object into the car. At trial Perez said instead that defendant, sitting in the passenger seat of the car, lit a fire and then got out of the car.

This court recently restated the principles applicable for instructing the juror on prior inconsistent statements.

> "The pattern jury instruction regarding inconsistent statements is appropriately given when two statements are inconsistent on a material matter. [Citation.] *** [T]he materiality of the prior inconsistent statement is an issue for the trial court to determine. *** [A]n issue is material when the contradiction reasonably tends to discredit the testimony of the witness on such facts." *People v. Eggert*, 324 Ill. App. 3d 79, 82 (2001).

In this case, as in *Eggert*, the trial court made no determination concerning the materiality of the inconsistency in the testimony. The court's comments on the record show that the court refused the instruction because defense counsel did not have a copy prepared for inclusion with the prosecution's instructions, and the court refused to wait five minutes for a printed copy, and the court would not accept a handwritten copy of the instruction.

The inconsistency between Perez's testimony at trial and his testimony at the preliminary hearing affected the credibility of his testimony that he saw defendant set the car on fire. Particularly under the circumstances of this case, where the evidence against defendant depended on the credibility of Perez's testimony, the court should have instructed the jury on the effect of prior inconsistent statements. See *Eggert*, 324 Ill. App. 3d at 82.

Finally, we note that the court refused the instruction and disallowed the interpreter's testimony apparently out of concern for the jurors' time. While jurors' inconvenience may warrant exclusion of evidence in some instances (see *People v. Cruz*, 162 Ill. 2d 314, 348 (1994)), the trial court must not lose sight of its obligation to provide the defendant a fair trial (see *People v. McKinney*, 260 Ill. App. 3d 539, 550 (1994)). The court here excluded highly relevant evidence of a conflicting translation of defendant's words, even though presentation of the evidence probably would have taken little time. We recognize the need to conserve time on a crowded docket, but we find that the exclusion of the evidence at issue demands reversal. Accordingly, we reverse and remand for a new trial.

Reversed and remanded.

TULLY and O'MALLEY, JJ., concur.