# Illinois Official Reports

## Appellate Court

---

### *People v. Betance-Lopez*, 2015 IL App (2d) 130521

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RUBEN BETANCE-LOPEZ, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0521 |
| Filed<br>Rehearing denied | February 27, 2015<br>April 10, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court upheld defendant's convictions for predatory criminal sexual assault and aggravated criminal sexual abuse, notwithstanding defendant's contention, *inter alia*, that the trial court improperly relied on a transcript of an audio recording as substantive evidence, since defendant did not challenge the accuracy of the English translation of defendant's answer and the trial court did not err in relying on the English translation as substantive evidence in view of the difficulty presented in requiring the trial court to rely on the Spanish portions of the recording as substantive evidence. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 11-CF-479; the Hon. John A. Barsanti, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas A. Lilien and Yasemin Eken, both of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Scott Jacobson, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices Jorgensen and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1      Following a bench trial, defendant, Ruben Betance-Lopez, was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2010)) and one count of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(2)(i) (West 2010)). On appeal, defendant challenges one of his convictions of predatory criminal sexual assault of a child, raising two contentions of error: (1) the trial court improperly relied on a transcript of an audio-recording as substantive evidence, and (2) the State failed to prove his guilt beyond a reasonable doubt. Because we conclude that the trial court properly relied on the transcript as substantive evidence and that the State proved defendant's guilt beyond a reasonable doubt, we affirm.

¶ 2                                I. BACKGROUND

¶ 3      On May 19, 2011, a grand jury returned a 16-count indictment, charging defendant with committing offenses against M.M., his 6-year-old step-granddaughter, between September 1, 2010, and March 5, 2011. Relevant to this appeal, count I charged defendant with predatory criminal sexual assault of a child in that he committed an act of sexual penetration by putting "his penis in the sex organ of M.M." Count VII charged defendant with predatory criminal sexual assault of a child in that he committed an act of sexual penetration by putting "his penis in the buttocks of M.M." Count XIV charged him with aggravated criminal sexual abuse in that he "placed his penis on the buttocks of M.M." for the purpose of sexual gratification or arousal.

¶ 4      A bench trial commenced on March 4, 2013. Karla Betance testified that she was M.M.'s mother and defendant's stepdaughter. On March 5, 2011, she and M.M. lived with defendant. Around 2 p.m. that day, Betance arrived home with her friend, Maria Trejo, and called out to M.M. to come downstairs to eat. M.M. did not respond, so Betance went upstairs to find her. The door to defendant's room was locked, but Betance was able to open it. Upon opening the door, she saw defendant stand up from the bed. M.M. was in the bed, partially covered by a blanket. It appeared to Betance that M.M. was pulling up her pants. Betance removed the blanket and saw that M.M.'s pants and underwear were down.

¶ 5      Betance and Trejo immediately drove M.M. to an urgent care clinic. During the drive to the clinic, Betance asked M.M. what had happened, but M.M. was crying and would not answer. M.M. said that she would tell Betance what happened if Trejo exited the car. Betance stopped the car, and Trejo got out. M.M. then told her mother that defendant "would put his pito in her chochita." According to Betance, "pito" meant "penis," and "chochita" meant "vagina." Trejo then returned to the car, and they drove to the clinic. At the clinic, M.M. related to the doctor the same information that she had related to Betance in the car.

¶ 6      M.M., who was eight years old at the time of trial, testified that defendant was her "grandpa" and that she had lived with him at some point. When asked what happened with defendant, M.M. testified, "He was doing something bad to me." She testified that it happened in defendant's room, where M.M. would go to watch the Disney channel. She and

defendant were under the covers, and she was on her back, while defendant was on his side. M.M. testified that his "private parts" touched her "on the back of [her] private parts." The State showed M.M. a drawing of an adult male and asked her to place an "X" on the part of the body that had touched her. She marked an "X" on the male's penis. The State then showed her a drawing of a female child and asked her to place an "X" on the part of the body that defendant had touched. She marked an "X" on the female child's buttocks.

¶ 7    Dr. Vipuli Jayensinghe testified that she was a physician at Kendall Immediate Care, where she examined M.M. on March 5, 2011. M.M. told Dr. Jayensinghe that her grandfather would put "his pipito in her pee area," that it hurt when he did it, and that it had happened several times. Dr. Jayensinghe's physical examination revealed three small red dots, as well as redness in the left pubic area. The doctor concluded "mostly by the history" that M.M. had been sexually abused. She called the police and sent M.M. to the emergency room for further examination.

¶ 8    Dr. Sangita Rangala testified as an expert in the field of "sexual assault examination of children." On March 5, 2011, she examined M.M. at the pediatric emergency department of Edwards Hospital and completed a sexual assault kit. As part of the sexual assault kit, she collected M.M.'s clothing and swabbed the internal and external parts of the vagina and anus. She circled on a diagram of the female anatomy the areas that she swabbed. The same swab was used for the external and internal swab of the anus.

¶ 9    Dr. Rangala testified that she categorized her examination of M.M. as "intermediate," because there were "no acute findings of sexual assault trauma." However, the doctor explained that the absence of findings of acute trauma did "not at all" indicate the absence of sexual abuse. She testified that 98% of her examinations were normal, because "[a] lot of times, abuse do[es] not leave a mark" or it leaves only redness or irritation that disappears within a few hours.

¶ 10    Christopher Webb testified that he was a forensic scientist with the Illinois State Police and that he performed forensic testing of the evidence collected from M.M. as part of the sexual assault kit. The vaginal swab, the anal swab, the external genitalia swab, and the underwear all tested positive for semen. The semen stains on the underwear were in the "inside front area" and "inside crotch area." The semen found on the underwear produced a male DNA profile from which defendant could not be excluded. The semen found on the external genitalia swab produced a male DNA profile that matched defendant's DNA profile. The semen found on the anal swab did not produce a sufficient amount of male DNA to develop a DNA profile.

¶ 11    Orlando Arroyo testified that he was a child protection investigator with the Illinois Department of Children and Family Services. He was assigned to the Kane County Children's Advocacy Center, where he interviewed M.M. on March 7, 2011. His interview of M.M. was recorded, and the video-recording was played at trial.[1]

---

[1]Following a pretrial evidentiary hearing, the trial court ruled that the video-recording was admissible pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2010)). At the conclusion of the trial, however, the court indicated that it had a number of concerns with how the interview was conducted, including that some of Arroyo's questions were "coercive." The court indicated that it would disregard the interview in determining defendant's guilt or innocence. Therefore, we do not summarize the interview.

¶ 12     Arroyo further testified that he participated in an audio-recorded interview of defendant with police officer Timothy Bosshart at the Aurora police department on March 7, 2011. During the interview, Officer Bosshart spoke English, defendant spoke Spanish, and Arroyo served as the interpreter. Specifically, Officer Bosshart asked questions in English, Arroyo repeated them in Spanish, defendant answered in Spanish, and Arroyo repeated the answers in English. According to Arroyo, defendant admitted during the interview to rubbing his penis on M.M.'s vagina and buttocks. When asked how defendant described touching his penis on the buttocks, Arroyo testified that he "described just a circular motion around the–on the buttocks not the anus."

¶ 13     Before playing the audio-recording of the interview for the court, the State showed Arroyo a written transcript of the recording, in which the English portion of the interview was transcribed verbatim and the Spanish portion of the interview was translated into English. Thus, each of defendant's answers appeared twice in the transcript–one version was the verbatim English transcription of Arroyo's live interpretation/translation of defendant's answer, and the second version was the transcriber's English translation of defendant's Spanish answer. Arroyo testified that he had reviewed the transcript and that it "fairly and accurately translate[d] from whatever Spanish words were made to English." He further testified that the transcript fairly and accurately transcribed the interview.

¶ 14     The State moved to admit the written transcript into evidence, and defense counsel objected on two bases. First, defense counsel argued that "we don't know who transcribed those audio statements" and "we don't know whether [the] Spanish portion[s] [were] translated correctly and accurately." Second, defense counsel argued that the transcript was unnecessary and improperly "highlight[ed]" defendant's statements, when the recording alone was sufficient.

¶ 15     The court overruled the objections, finding that Arroyo's testimony that he reviewed the transcript and that it fairly and accurately reflected both the English and Spanish portions of the recording was sufficient to lay a foundation to admit the transcript. Further, the court found that the transcript did not "highlight" the evidence, because the Spanish portions of the recording "would have no meaning" to the court without the English-translation transcript.

¶ 16     At this point, defense counsel offered a third objection. Counsel argued that, because the recording contained Arroyo's live interpretations of defendant's Spanish answers, the English-translation transcript was unnecessary. The State responded that the transcript's English translations allowed the court to assess whether Arroyo's live interpretations were accurate. Defense counsel then responded, "if the [d]efense believes that there's an unfair translation, we would certainly call a witness to that effect." Defense counsel further stated, "[a]t this point, we don't take issue with the translation." Defense counsel indicated that "[w]e accept that Investigator Arroyo has accepted that it's fair and accurate." The court then admitted the audio-recording and the written transcript into evidence.

¶ 17     During the recorded interview, which was played for the court, defendant admitted to touching M.M.'s vagina with his hand and penis on approximately four occasions. However, he denied inserting his penis into the vagina. In addition, he admitted to placing his mouth, lips, and tongue on M.M.'s vagina. He further admitted to grabbing M.M.'s buttocks with his hands and rubbing his penis on her buttocks. Defendant was then asked if he "put it inside." Arroyo's live interpretation of defendant's answer was: "no just rubbing it on her butt. I did not insert it or anything." The written transcript's English translation of defendant's answer

- 4 -

was: "[n]o only around the rim I would do like this but I would not put it inside or anything." Defendant admitted that this happened "three or four times."

¶ 18 The State rested its case, and defendant did not present any evidence.

¶ 19 The trial court found defendant guilty of counts I, VII, and XIV. Regarding count I, which charged defendant with predatory criminal sexual assault of a child in that he committed an act of sexual penetration by putting "his penis in the sex organ of M.M.," the trial court found that the words "in the sex organ of M.M." were surplusage. The court explained that, to prove an act of sexual penetration, the State had to prove "any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person" (720 ILCS 5/12-12(f) (West 2010)). The court found that defendant admitted to contact between his penis and M.M.'s vagina and that the DNA evidence corroborated defendant's confession.

¶ 20 Regarding count VII, which charged defendant with predatory criminal sexual assault of a child in that he committed an act of sexual penetration by putting "his penis in the buttocks of M.M.," the court again found that the words "in the buttocks of M.M." were surplusage. The court found that, during the interview, defendant admitted to rubbing his penis "around the rim" of M.M.'s anus. Furthermore, the court found that, although no DNA profile could be developed from the semen found on the anal swab, the presence of semen on the anal swab corroborated defendant's confession. Based on this evidence, the court also found defendant guilty of count XIV, which charged defendant with aggravated criminal sexual abuse in that he "placed his penis on the buttocks of M.M." for the purpose of sexual gratification or arousal.

¶ 21 Defendant filed a posttrial motion, in which he asserted, without supporting analysis, that the trial court erred in "allowing the State to admit [d]efendant's statements and transcript of the statements during the trial over [d]efense objection." The court denied the motion.

¶ 22 Following a sentencing hearing, the court imposed consecutive eight-year sentences for counts I and VII. The court ruled that the conviction of count XIV merged into the conviction of count VII, so it imposed no sentence for count XIV. Defendant timely appeals.


¶ 23                                   II. ANALYSIS

¶ 24 On appeal, defendant challenges only his conviction of count VII, predatory criminal sexual assault of a child. He argues (1) that the trial court improperly relied on the transcript of the audio-recording of his interview as substantive evidence, and (2) that the State failed to prove beyond a reasonable doubt that his penis made any contact with the victim's anus. In addition, the State asks this court to remand to the trial court for sentencing on defendant's conviction of count XIV, arguing that the trial court incorrectly merged defendant's conviction of aggravated criminal sexual abuse into his conviction of predatory criminal sexual assault of a child.


¶ 25                   A. Transcript of Defendant's Interview

¶ 26 Defendant argues that the trial court erred in relying on the written transcript of the audio-recording of his interview with police as substantive evidence. He concedes that Arroyo laid a sufficient foundation for the written transcript and that the trial court properly admitted it into evidence. However, he invokes the well-established rule that, while it is

proper to admit a written transcript of a recording to assist the trier of fact, it is the recording itself, not the transcript, that is the evidence to be considered (*People v. Criss*, 307 Ill. App. 3d 888, 899 (1999)). Defendant further maintains that the trial court's reliance on the transcript as substantive evidence prejudiced him, because there is a "conflict" between the transcript and the recording. He contends that the transcript contains the phrase "around the rim," implying anal contact, while the recording does not.

¶ 27    The State responds that, because the audio-recording was partly in English and partly in Spanish, while the transcript was entirely in English, the transcript was "substantively distinct" from the recording. Thus, the State argues, the transcript was more than an aid for the trier of fact, and the trial court properly relied on the transcript as substantive evidence.

¶ 28    Initially, we note that defendant concedes that he did not raise this specific issue before the trial court. He asks that we review it under the plain-error doctrine. Alternatively, he maintains that trial counsel was ineffective for failing to argue that it was error to rely on the transcript as substantive evidence. Because we conclude that no error occurred, we need go no further in addressing defendant's plain-error or ineffective-assistance-of-counsel arguments. See *People v. Miller*, 2014 IL App (2d) 120873, ¶ 17 ("[T]he first step in determining whether the plain-error doctrine applies is to determine whether any reversible error occurred."); see also *People v. Mahaffey*, 194 Ill. 2d 154, 173 (2000) (the prejudice prong of the ineffective-assistance-of-counsel test cannot be established when no error has occurred), *overruled on other grounds by People v. Wrice*, 2012 IL 111860.

¶ 29    The parties disagree over the applicable standard of review. Defendant contends that *de novo* review applies because "the issue is not whether the transcript was admissible" but whether the trial court was permitted to rely on the written transcript as substantive evidence. Defendant relies on *People v. Munoz*, 348 Ill. App. 3d 423, 438 (2004), which held that *de novo* review is appropriate when an evidentiary ruling is exclusively based upon the submission of documents. The State responds that evidentiary rulings are subject to review for abuse of discretion and questions whether this aspect of *Munoz* survived the supreme court's decision in *People v. Taylor*, 2011 IL 110067, ¶ 27, holding that the admission of a videotape is subject to abuse-of-discretion review. The State further argues that we need not decide which standard applies, as the result would be the same under either one. We agree with the State that our conclusion would be the same under either standard, so we leave resolution of this issue to another day. See *People v. Robinson*, 391 Ill. App. 3d 822, 840 (2009) ("[W]e leave the resolution of this issue to another day, as our conclusion would be the same applying either standard.").

¶ 30    Turning to the merits, defendant accurately recites the general rules governing the use at trial of transcripts of recorded conversations. In the context of a jury trial, one court explained the rules as follows:

> "It is well settled that it is proper for a trial court to permit the jury to use written transcripts of recorded conversations to assist them while they listen to the conversations, when the transcripts are used solely for this limited purpose and are collected from the jurors after they have listened to the tapes. [Citations.] Even when used for this limited purpose, however, the trial court should admonish the jury as to the purpose of the transcripts and to instruct the jury to determine for itself the events transpiring on the tape. [Citations.]" *Criss*, 307 Ill. App. 3d at 899.

The court further explained that "the tape rather than the transcript" is the evidence and that the transcript is merely an aid for the trier of fact. *Criss*, 307 Ill. App. 3d at 901.

¶ 31    Neither party has cited, and our research has not uncovered, any Illinois case addressing whether these general rules apply to a transcript that contains translations of foreign-language statements in a recording. While lower federal court decisions are not binding upon state courts, it is permissible to look to them as persuasive authority. *Criss*, 307 Ill. App. 3d at 900. Having looked to such decisions, we hold that it was proper for the trial court to rely on the translations in the transcript as substantive evidence.

¶ 32    In *United States v. Fuentes-Montijo*, 68 F.3d 352 (9th Cir. 1995), the Ninth Circuit rejected the defendants' argument that it was error to instruct the jury to rely on transcripts that contained English translations of Spanish-language recordings. Like defendant in our case, the defendants in *Fuentes-Montijo* relied on "the longstanding rule that the tapes themselves are the primary evidence." *Fuentes-Montijo*, 68 F.3d at 354. In rejecting this argument, the court reasoned that "[w]hen faced with a taped conversation in a language other than English and a disputed English translation transcript, the usual admonition that the tape is the evidence and the transcript only a guide is not only nonsensical, it has the potential for harm where the jury includes bilingual jurors." *Fuentes-Montijo*, 68 F.3d at 355-56; see also *United States v. Bahadar*, 954 F.2d 821, 830-31 (2d Cir. 1992) (holding that it was proper to permit the jury to rely on English-translation transcripts of recordings of conversations conducted in a mixture of English and Pakistani, reasoning that it was "hard to imagine any other proper and effective handling of this evidence"); *United States v. Cruz*, 765 F.2d 1020, 1024 (11th Cir. 1985) (holding that it was proper to permit the jury to rely on an English-translation transcript of a Spanish-language recording as substantive evidence).

¶ 33    We find the reasoning of *Fuentes-Montijo* and similar cases to be persuasive. Where a recording contains statements in a foreign language, it would be impractical, or even impossible, to require the trier of fact to rely on the recording to the exclusion of an English-translation transcript. As our supreme court noted in 1859, "[w]hen the facts, conversations or admissions, admissible in evidence, are known to a person who does not understand and speak the language in which the trial is conducted, then the only means by which the jury or court trying the issue can arrive at the facts, is from the evidence through an interpreter." *Schnier v. People*, 23 Ill. 11, 23 (1859); see also *People v. Carmona-Olvara*, 363 Ill. App. 3d 162, 167 (2005) (quoting this language from *Schnier*). Likewise, where a recording contains statements in a foreign language, the trier of fact can consider those statements as evidence only if the statements have been translated into English. Therefore, the trial court did not err in relying on the transcript's English-language translations as substantive evidence.

¶ 34    That the recording in this case contained Arroyo's live interpretations of defendant's answers does not alter our conclusion. During the interview, Arroyo served as an interpreter. Defendant gave his answers in Spanish, and Arroyo interpreted the answers for Officer Bosshart, who spoke English. We see no reason why the State should be bound by Arroyo's live interpretations. Unlike Arroyo, who was interpreting defendant's answers in person with little time to consider the accuracy of his interpretations, the translator who prepared the transcript had the luxury of listening to the recording, multiple times if necessary, to ensure that he or she accurately translated defendant's answers. Moreover, as we have noted, defendant concedes that there was a proper evidentiary foundation for the transcript. The trial

court was thus entitled to rely on the translations in the transcript. See *People v. Brown*, 2013 IL 114196, ¶ 48 (noting that it is the responsibility of the trier of fact to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences from the evidence).

¶ 35    In reaching this holding, we emphasize that defendant had the opportunity to offer an alternative translation of his answers, to cross-examine Arroyo regarding the accuracy of the transcript, or to call his own interpreter to testify to the proper interpretation of his answers. See *Carmona-Olvara*, 363 Ill. App. 3d at 167-68 (holding that a defendant has the right to offer a competing translation of his statement to a police officer). However, defense counsel did none of these things. Although defense counsel initially objected to the transcript on the basis that "we don't know who transcribed th[e] audio statements" and "we don't know whether [the] Spanish portion[s] [were] translated correctly and accurately," counsel later abandoned this objection. During the colloquy regarding the transcript's admissibility, defense counsel stated that "if the [d]efense believes that there's an unfair translation, we would certainly call a witness to that effect." Defense counsel later stated that "we don't take issue with the translation" and "[w]e accept that Investigator Arroyo has accepted that it's fair and accurate."

¶ 36    Furthermore, although defendant argues that there is a "conflict" between the transcript and the recording, in that the transcript contains the phrase "around the rim," while the recording does not, this is different from challenging the transcript's accuracy. The only "conflict" between the transcript and the recording is that defendant's answers are in Spanish on the recording but in English in the transcript. Thus, while defendant is correct that the recording does not contain the English phrase "around the rim," he does not challenge that wording as an accurate English translation of his answer. As we concluded above, the trial court did not err in relying on the English translation as substantive evidence, because it would have been impractical, or even impossible, for the court to rely on the Spanish portions of the recording as substantive evidence.

¶ 37                            B. Sufficiency of the Evidence

¶ 38    Defendant also challenges his conviction of count VII, on the basis that the State failed to prove beyond a reasonable doubt that his penis made any contact with M.M.'s anus. In making this argument, defendant contends that it was improper for the trial court to rely on the "around the rim" statement in the transcript as substantive evidence, an argument that we have already rejected. Alternatively, he contends that "around the rim" could have meant "around the rim of the buttocks," rather than "around the rim of the anus." He further argues that the remainder of the evidence indicated that his penis contacted M.M.'s buttocks only.

¶ 39    The State responds that, viewing the "around the rim" statement in light of the evidence of semen found on the anal swab and on M.M.'s underwear, a rational trier of fact could have found beyond a reasonable doubt that defendant's penis contacted M.M.'s anus.

¶ 40    When presented with a challenge to the sufficiency of the evidence, it is not the function of the reviewing court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The reviewing court should not substitute its judgment for that of the trier of fact, who is responsible for weighing the

- 8 -

evidence, assessing the credibility of witnesses, resolving conflicts in the evidence, and drawing reasonable inferences and conclusions from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). However, a reviewing court must set aside a defendant's conviction if a careful review of the evidence reveals that it was so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 41    Count VII charged defendant with predatory criminal sexual assault of a child under section 12-14.1(a)(1) of the Criminal Code of 1961 (Code) (720 ILCS 5/12-14.1(a)(1) (West 2010)). That section required the State to prove that defendant was 17 years of age or older and committed an act of sexual penetration with a victim who was under 13 years of age when the act was committed. 720 ILCS 5/12-14.1(a)(1) (West 2010). The Code defines "sexual penetration," in pertinent part, as "any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person." 720 ILCS 5/12-12(f) (West 2010). "Evidence that the defendant's sex organ only touched an area near the complainant's sex organ or anus is insufficient to establish the element of penetration." *People v. Atherton*, 406 Ill. App. 3d 598, 609 (2010). The State must prove " 'actual contact.' " *Atherton*, 406 Ill. App. 3d at 609 (quoting *People v. Finley*, 178 Ill. App. 3d 301, 307 (1988)).

¶ 42    The evidence relevant to count VII, which alleged sexual penetration of M.M.'s anus with defendant's penis, included the following. M.M. testified that defendant's "private parts" touched her "on the back of [her] private parts." When the State then showed her a drawing of a female child and asked her to place an "X" on the part of the body that defendant's penis had touched, she marked an "X" on the female child's buttocks. Dr. Rangala testified that, while completing the sexual assault kit on M.M., she swabbed the external and internal parts of the anus. Webb testified that the anal swab tested positive for semen, but that there was an insufficient amount of semen to produce a male DNA profile. However, additional semen located on the external genitalia swab produced a DNA profile that was a match for defendant, and the semen found on M.M.'s underwear produced a male DNA profile from which defendant could not be excluded. During his interview, defendant admitted to grabbing M.M.'s buttocks with his hands and rubbing his penis on her buttocks. Defendant was then asked if he "put it inside." The written transcript's English translation of defendant's answer was "[n]o only around the rim I would do like this but I would not put it inside or anything."

¶ 43    Because we have already concluded that it was proper for the trial court to rely on the transcript–including the "around the rim" statement–as substantive evidence, we must conclude that, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant's penis made contact, however slight, with the anus of M.M. Although defendant contends that "around the rim" could have meant "around the rim of the buttocks," it was the trial court's responsibility to draw reasonable inferences from the evidence. Especially considering the evidence of semen found on the anal swab, it was reasonable to infer that "around the rim" meant "around the rim of the anus." M.M.'s testimony that defendant's penis touched "the back of [her] private parts," and the fact that she marked an "X" on the buttocks of the diagram of a female child, also supported this inference.

¶ 44    Defendant contends that Dr. Rangala's use of the same swab on the external and internal parts of the anus meant that "the presence of sperm could have been attributed to contact near the anus instead of contact with or an intrusion of it." However, Dr. Rangala's testimony was that she swabbed the external and internal parts of the anus, not areas around the anus. The diagram on which the doctor circled the area that she swabbed is consistent with her testimony.

¶ 45    Defendant also emphasizes Arroyo's testimony that defendant described the contact his penis made with M.M.'s buttocks as "just a circular motion around the–on the buttocks not the anus." However, as we have said, we see no reason why the State should be bound by Arroyo's interpretations of defendant's answers. Again, the trial court was entitled to rely on the translations in the transcript.

¶ 46    Furthermore, defendant's reliance on *People v. Oliver*, 38 Ill. App. 3d 166 (1976), is misplaced. In *Oliver*, the appellate court reduced the defendant's conviction from deviate sexual assault to attempted deviate sexual assault, where the only evidence of penis-anus touching was the complaining witness's use of the phrase " 'in my butt' " when describing the defendant's conduct. *Oliver*, 38 Ill. App. 3d at 170. Moreover, the complaining witness, who was not a minor, had said out of court that the defendant's penis "went along her 'cheeks.' " *Oliver*, 38 Ill. App. 3d at 170. Here, the evidence is much stronger. In addition to defendant's admission to rubbing his penis "around the rim," there was evidence of semen on or in M.M.'s anus.

¶ 47                          C. State's Request for a Remand

¶ 48    The State asks this court to remand to the trial court for sentencing on defendant's conviction of count XIV, which charged defendant with aggravated criminal sexual abuse. According to the State, the trial court incorrectly concluded that aggravated criminal sexual abuse was a lesser included offense of predatory criminal sexual assault of a child. Thus, the State argues, defendant should be sentenced on his conviction of count XIV.

¶ 49    Defendant responds that the State forfeited this argument by failing to raise it below. Moreover, defendant argues, the State fails to address the first step of a one-act, one-crime analysis–*i.e.*, whether the two convictions were predicated upon the same physical act. According to defendant, because the trial court found that his convictions were based on the same physical act, his conviction of aggravated criminal sexual abuse should be vacated.

¶ 50    We first address defendant's forfeiture argument. In *People v. Yaworski*, 2011 IL App (2d) 090785, this court recognized its authority, in a direct appeal by a criminal defendant, to grant the State's request for a remand for imposition of a sentence on a conviction that was improperly vacated under one-act, one-crime principles. *Yaworski*, 2011 IL App (2d) 090785, ¶ 10 (citing *People v. Scott*, 69 Ill. 2d 85, 88 (1977)). However, we concluded that the State had forfeited its one-act, one-crime argument by failing to raise it below. *Yaworski*, 2011 IL App (2d) 090785, ¶ 10. Ultimately, we overlooked the forfeiture, reasoning that "[s]ociety has an interest in seeing convictions entered for offenders whose guilt has been proved beyond a reasonable doubt after a fair trial." *Yaworski*, 2011 IL App (2d) 090785, ¶ 10. We further reasoned that, "when that interest has been frustrated by the trial court's misapplication of the sometimes nebulous rules concerning merger of convictions, relaxation of the forfeiture doctrine is appropriate." *Yaworski*, 2011 IL App (2d) 090785, ¶ 10.

¶ 51    Addressing the merits of the issue, we concluded that the trial court had improperly merged the defendant's conviction of driving while his license was revoked (DWLR) into his conviction of driving under the influence of alcohol (DUI). *Yaworski*, 2011 IL App (2d) 090785, ¶ 10. Rather than remand to the trial court for sentencing, however, we imposed a sentence of three years' imprisonment for DWLR, to run concurrently with the defendant's sentence for DUI. *Yaworski*, 2011 IL App (2d) 090785, ¶ 10.

¶ 52    In *People v. Ramos*, 339 Ill. App. 3d 891 (2003), by contrast, this court declined to address the State's argument, raised for the first time on appeal, that a conviction had been improperly vacated under one-act, one-crime principles. *Ramos*, 339 Ill. App. 3d at 905. Although our decision was not expressly based on considerations of forfeiture, we considered the prejudice that would result to the defendant if we permitted the State to raise its argument for the first time on appeal. We reasoned that, "[i]f the State had made a timely objection, defendant would have been on notice of the State's position and defendant would have had the opportunity to decide whether he wanted to appeal, knowing that on appeal the merged offenses could be reinstated." *Ramos*, 339 Ill. App. 3d at 905. We acknowledged that, in *People v. Dixon*, 92 Ill. 2d 346 (1982), our supreme court stated that not permitting the State to raise an improper-merger argument on appeal could have " 'mischievous consequences,' " including that " 'crimes could go unpunished.' " *Ramos*, 339 Ill. App. 3d at 905 (quoting *Dixon*, 91 Ill. 2d at 354). However, we distinguished *Dixon* on the basis that we were not vacating any of the defendant's convictions. *Ramos*, 339 Ill. App. 3d at 905. Thus, even without a remand, the defendant would not go unpunished. *Ramos*, 339 Ill. App. 3d at 905.

¶ 53    Here, the State concedes that it did not object to the trial court's decision to merge the conviction of count XIV into the conviction of count VII. Therefore, the State has forfeited this argument. *Yaworski*, 2011 IL App (2d) 090785, ¶ 10. As we explain below, we decline to overlook the State's forfeiture for two reasons.

¶ 54    First, although *Yaworski* identifies a compelling reason to relax the forfeiture doctrine, the facts of that case are distinguishable. The improperly merged conviction in *Yaworski* was DWLR, which does not require mandatory consecutive sentencing. In that case, rather than remand to the trial court for sentencing, we imposed a three-year sentence for DWLR to be served concurrently with the defendant's sentence for DUI. *Yaworski*, 2011 IL App (2d) 090785, ¶ 10. As a result, the defendant spent no additional time in prison, and our relaxation of the forfeiture doctrine caused no practical prejudice to the defendant.

¶ 55    In this case, by contrast, if we were to overlook the State's forfeiture and ultimately remand for sentencing, defendant's conviction would require mandatory consecutive sentencing. See 730 ILCS 5/5-8-4(d)(2) (West 2010) (requiring consecutive sentences for a defendant convicted of predatory criminal sexual assault of a child). Thus, we cannot solely consider society's interest in seeing defendant punished for his conviction of count XIV, but must also consider the prejudice to defendant. Because of this, the reasoning of *Ramos* is applicable here. Specifically, if the State had challenged the court's merger decision below, then defendant would have been on notice of the State's position and could have decided whether he wanted to appeal, knowing that the merged conviction could be reinstated. *Ramos*, 339 Ill. App. 3d at 905. In light of the mandatory consecutive sentencing, defendant would have faced a difficult choice and might have chosen not to appeal.

¶ 56    The second reason that we decline to relax the forfeiture doctrine is that, were we to do so, the State's failure to address the first step of a one-act, one-crime analysis in its brief

would further impede our review. The one-act, one-crime doctrine involves a two-step analysis. *People v. Miller*, 238 Ill. 2d 161, 165 (2010). The first step is to determine whether the defendant's conduct involved multiple acts or a single act. *Miller*, 238 Ill. 2d at 165. If the defendant's conduct consisted of a single act, multiple convictions are improper. *Miller*, 238 Ill. 2d at 165. If the defendant's conduct involved multiple acts, then the second step of the analysis is to determine whether any of the offenses are lesser included offenses. *Miller*, 238 Ill. 2d at 165. If an offense is a lesser included offense, then multiple convictions are improper. *Miller*, 238 Ill. 2d at 165.

¶ 57    As defendant points out, the State focuses exclusively on the second step of the analysis. It contends that the trial court improperly applied the charging-instrument approach to determine that aggravated criminal sexual abuse was a lesser included offense of predatory criminal sexual assault of a child. In doing so, it correctly asserts that the abstract-elements approach, not the charging-instrument approach, applies when a defendant alleges a one-act, one-crime violation as to multiple charged offenses. *Miller*, 238 Ill. 2d at 173. It also correctly points out that, under the abstract-elements approach, aggravated criminal sexual abuse is not a lesser included offense of predatory criminal sexual assault of a child. *People v. Stull*, 2014 IL App (4th) 120704, ¶ 64.

¶ 58    However, as we interpret it, the trial court's ruling was based on the first step of a one-act, one-crime analysis, not on the charging-instrument approach. At his sentencing hearing, in arguing that his conviction of count XIV should be merged into his conviction of count VII, defendant discussed the charging-instrument approach, but also contended that counts VII and XIV were based on "the same single act." He argued that the court "used the same evidence" in finding him guilty of the two counts. Addressing defendant's arguments, the trial court reviewed the language of counts VII and XIV and concluded that they were "basically of the same physical act." It then said that, when it rendered its original ruling on counts VII and XIV, it "didn't think through that at the time," referring to the fact that the convictions were based on the same physical act. The court then concluded that count XIV was "a lesser included" of count VII and merged the convictions.

¶ 59    Although defendant's argument at the sentencing hearing and the trial court's ruling were not entirely clear, the substance of the court's merger decision was that the convictions of counts VII and XIV were "basically of the same physical act." Indeed, when the court found defendant guilty of count XIV, it made no new factual findings, but stated that its finding of guilt was based on "the reasons that [the court] previously stated" in finding defendant guilty of count VII. In deciding to merge the convictions, the court noted that it had not thought "through that at the time." Therefore, we conclude that the court's determination that the two convictions were based on the same physical act was a determination under the first prong of a one-act, one-crime analysis, not under the charging-instrument approach. Accordingly, even if we were to overlook the State's forfeiture deriving from its failure to raise the issue below, we would be confronted with another level of forfeiture deriving from its failure to address the first-prong of a one-act, one-crime analysis in its brief. See *People v. Olsson*, 2014 IL App (2d) 131217, ¶ 15 (noting that, pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013), a party's failure to argue a point in his or her brief results in forfeiture of the issue on appeal); see also Ill. S. Ct. R. 341(i) (eff. Feb. 6, 2013) (requiring an appellee's brief to comply with Rule 341(h)(7)).

¶ 60     We also note that, even if the State is correct that the trial court improperly applied the charging-instrument approach in reaching its decision, it might be that the trial court reached the correct judgment but for the wrong reason. We review the trial court's judgment, not its reasoning. *Village of Bull Valley v. Zeinz*, 2014 IL App (2d) 140053, ¶ 16. Furthermore, we can affirm the trial court's judgment on any basis supported by the record. *People v. Perez-Gonzalez*, 2014 IL App (2d) 120946, ¶ 31. Therefore, it was necessary for the State to discuss the first prong of a one-act, one-crime analysis in order to fully address the propriety of the court's merger decision. In sum, we decline to overlook the State's forfeiture.

¶ 61     Regarding defendant's request that we vacate his conviction of aggravated criminal sexual abuse under one-act, one-crime principles, defendant has already received the relief he requests. The effect of a trial court merging one conviction into another conviction is vacatur of the merged conviction. *People v. Martino*, 2012 IL App (2d) 101244, ¶ 8 n.1 (citing *People v. Jones*, 337 Ill. App. 3d 546, 555 (2003), citing *People v. Kargol*, 219 Ill. App. 3d 66, 75 (1991)). Thus, when the trial court merged the conviction of count XIV into the conviction of count VII, the conviction of count XIV was vacated by operation of law. Indeed, the mittimus shows convictions only of counts I and VII.

¶ 62                                    III. CONCLUSION
¶ 63     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 64     Affirmed.