2020 IL App (2d) 170711-U
No. 2-17-0711
Order filed March 11, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-710 |
| DONEVIN QUICK, | ) ) ) | Honorable Donald M. Tegeler, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court's judgment was affirmed where (1) the record did not support defendant's argument that he was never properly admonished of the possibility of being tried in *absentia* and (2) the trial court did not abuse its discretion in admitting into evidence photographs depicting a text message exchange.

¶ 2   Following a trial in *absentia* in the circuit court of Kane County, a jury found defendant, Donevin Quick, guilty of unlawful delivery of a controlled substance containing less than one gram of heroin, a Class 2 felony. Due to defendant's criminal history, he was required to be sentenced as a Class X offender. The court sentenced defendant in *absentia* to 10 years in prison. Defendant appeals, arguing that he was never orally admonished of the possibility of being tried in *absentia*

and that the court erred in admitting photographs of text messages without the proper authentication and foundation. For the reasons that follow, we affirm. However, on our own motion, we correct the mittimus to reflect that defendant was convicted of violating section 401(d)(i) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/401(d)(i) (West 2014)), not section 407(a)(2)(B) of the Act (720 ILCS 570/407(a)(2)(B) (West 2014)).

¶ 3                                    I. BACKGROUND

¶ 4      Defendant and Jeanine Oliver allegedly sold heroin to an undercover police officer on April 18, 2014. On April 28, 2014, defendant was charged by complaint with (1) unlawful delivery of a controlled substance within 1000 feet of a church (720 ILCS 570/407(b)(2) (West 2014)), a Class 1 felony, and (2) unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2014)), a Class 2 felony. That day, the court issued a warrant for defendant's arrest. On October 16, 2014, defendant was arrested on that warrant.

¶ 5      Defendant's first court appearance was for a bond call on October 17, 2014, before Judge Robert K. Villa. The record does not contain a transcript of those proceedings, and the supervisor of court reporters for the 16th judicial circuit signed an affidavit attesting that no reporter was present. The record contains three preprinted orders entered on October 17, 2014. The first order indicates, *inter alia*, that "[r]ights, penalties and trial in absentia have been explained to the defendant." The second order, which remanded defendant to the custody of the sheriff, likewise indicates that "[r]ight [*sic*], penalties and trial in absentia have been explained to the defendant." A third order that was entered that day is duplicative of the second order.

¶ 6      On February 18, 2015, a grand jury indicted defendant in connection with the April 18, 2014, drug transaction on one count of unlawful delivery of a controlled substance within 1000 feet of a church. On February 25, 2015, the court, Judge Susan Clancy Boles presiding, arraigned

defendant on that indictment, and defendant pleaded not guilty. Although the written order entered that day states "Defendants [*sic*] rights and penalties explained," a transcript of the proceedings confirms that defendant was not admonished that day about the possibility of a trial in *absentia*. Similarly, trial scheduling orders that were entered on April 8, 2015, and February 2, 2017, both indicate that "[t]he defendant has been admonished with respect to a trial in absentia." The transcripts of those proceedings, however, confirm that defendant was not admonished on those days about the possibility of a trial in *absentia*.

¶ 7 Although defendant generally attended his scheduled court dates prior to trial, he failed to appear in court on May 17, 2017, for the final pretrial conference. That day, the court, Judge Linda S. Abrahamson presiding, granted the State's motion in *limine* to admit as co-conspirator statements Oliver's text messages with an undercover police officer, provided that the State laid the proper foundation at trial.

¶ 8 Defendant failed to appear for trial on May 22, 2017. That day, the court, Judge Donald M. Tegeler presiding, reviewed the February 25, 2015, and April 8, 2015, orders that Judge Boles had entered. Judge Tegeler believed that those orders showed that defendant had been warned of the possibility of a trial in *absentia*, so the court proceeded with the scheduled jury trial in defendant's absence.

¶ 9 The evidence at trial showed that Officer Donald Wells of the Carpentersville police department worked as an undercover narcotics officer. Around April 17, 2014, Officer Wells met Oliver, who went by the nickname "Gigi." When they met, Gigi gave Officer Wells her telephone number. On April 17 and April 18, 2014, Officer Wells exchanged numerous text messages with at least one person at this telephone number. Over defense counsel's objection, the court admitted into evidence photographs depicting this exchange of text messages. Many of the messages that

Officer Wells received appear from their context to have been sent by Gigi. Some of the messages, however, were purportedly sent by someone who identified himself as "Don" and claimed to be Gigi's "old man." Via his text communications with this phone number, Officer Wells arranged to meet at a restaurant in Elgin on April 18, 2014, to purchase heroin. At some point on April 18, Officer Wells received a call from this same phone number; Gigi was on the phone, and Officer Wells recognized her voice from their previous interaction.

¶ 10    On April 18, 2014, Officer Wells arrived at the agreed location at the agreed time, and other police officers conducted surveillance in an unmarked car from a distance. A black Ford Ranger pickup truck arrived and parked near Officer Wells. Officer Wells noticed that Gigi was sitting in the passenger's side of that truck and a male was in the driver's seat. Officer Wells approached the passenger's side of the truck. During a brief conversation with both Gigi and the driver of the truck, Officer Wells handed Gigi $40. Gigi gave that money to the driver of the truck, who then handed Officer Wells four baggies of a gray, rock-like substance. No arrests were made at that time, and Officer Wells and the other officers drove back to the police station. Officers ran the plates on the truck and determined that it was registered to defendant. Officers then obtained a photograph of defendant through the Secretary of State. Officer Wells identified the person in that photograph as the man who had been with Gigi in the truck during the drug transaction. Subsequent laboratory testing indicated that one of the four bags (the only one that was tested) contained heroin.

¶ 11    The court granted defense counsel's motion for a directed verdict on the charge of unlawful delivery of a controlled substance within 1000 feet of a church, as the State failed to present evidence that the subject church was operational on the day of the drug transaction. The court allowed the State to proceed on the lesser-included charge of unlawful delivery of a controlled

substance.  The jury found defendant guilty of that charge.  Defendant did not appear in court for the sentencing hearing, and the court sentenced him to 10 years in prison.  Defendant timely appealed.

¶ 12                                    II. ANALYSIS

¶ 13    Defendant argues that he was not properly tried and sentenced in *absentia* and that the court erred in admitting the photographs of the text message exchange.

¶ 14                               A. Trial in *Absentia*

¶ 15    Defendant first argues that it was plain error for the court to try and sentence him in *absentia*, as he was never orally admonished of the possibility of being tried in *absentia*. Defendant invokes the second prong of the plain-error doctrine: *i.e.*, that a clear or obvious error was "so serious that it affected the fairness of the *** trial and challenged the integrity of the judicial process."  *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).  The State responds by emphasizing that the court orders that were entered on October 17, 2014, reflect that defendant was indeed warned of the possibility of a trial *in absentia*.  According to the State, even though there was no court reporter present that day, it was defendant's burden to provide a bystander's report of the proceedings.  The State maintains that, because defendant failed to present a complete record, we must construe any ambiguities in the record against him.  In his reply brief, defendant contends that, because the October 17, 2014, orders do not reflect whether he was orally admonished of the possibility of a trial in *absentia* (as opposed to being provided written warnings), it would "create[ ] a dangerous precedent" for us to infer that he was properly orally admonished.  Defendant further submits that it would be an "unreasonable request" to require him to provide a bystander's report for a proceeding that occurred more than five years ago.

¶ 16    The first step in the plain-error analysis is to determine whether any error occurred.  See *Piatkowski*, 225 Ill. 2d at 565.  For the following reasons, we conclude that no error occurred.

¶ 17    A criminal defendant has both the right and the duty to be present at trial.  *People v. Garner*, 147 Ill. 2d 467, 481 (1992).  "A prerequisite to enforcing a defendant's duty to be present by proceeding in his voluntary absence is that the defendant understand that he has such a duty as well as the right to be present."  *Garner*, 147 Ill. 2d at 481-82.   To that end, section 113-4(e) of the Code of Criminal Procedure of 1963—which is contained within an article of the Code governing arraignment—provides that a defendant must be warned of the possibility of a trial in *absentia*:

> "If a defendant pleads not guilty, the court shall advise him at that time or at any later court date on which he is present that if he escapes from custody or is released on bond and fails to appear in court when required by the court that his failure to appear would constitute a waiver of his right to confront the witnesses against him and trial could proceed in his absence."  725 ILCS 5/113-(4)(e) (West 2018).

Our supreme court has interpreted section 113-4(e) of the Code as requiring trial judges to provide defendants in-*absentia* warnings orally and in open court.  *People v. Phillips*, 242 Ill. 2d 189, 199-200 (2011).  If the trial court fails to provide such admonishments, the defendant may not be tried or sentenced in *absentia*.  See, *e.g.*, *People v. Watson*, 109 Ill. App. 3d 880, 882-84 (1982) (where the defendant was never personally admonished of the possibility of a trial in *absentia*, the trial court committed plain error by holding a trial in the defendant's absence).

¶ 18    Here, Judge Tegeler determined on the first day of trial that Judge Boles's February 25, 2015, and April 8, 2015, orders showed that Judge Boles had properly admonished defendant about the possibility of a trial in *absentia*.  Accordingly, Judge Tegeler ruled that it was permissible to

proceed in defendant's absence. As the State concedes, despite what those two court orders entered by Judge Boles suggest, the transcripts confirm that the issue of trial in *absentia* was not discussed in court on those days. In fact, the record does not contain any transcript showing that defendant was personally given trial-in-*absentia* admonishments by the court. Of course, Judge Tegeler had no way of knowing this, as the matter was transferred to him on the day of trial and he did not have access to the transcripts of the pretrial proceedings.

¶ 19    Nevertheless, as the State notes, we review the trial court's judgment, not its reasoning, and we may affirm on any basis supported by the record. *People v. Betance-Lopez*, 2015 IL App (2d) 130521, ¶ 60. The preprinted orders that were entered on October 17, 2014, indicate via handwritten marks in the designated boxes that "[r]ights, penalties and trial in absentia have been explained to the defendant." The record does not contain a transcript of those proceedings or an acceptable substitute (see Ill. S. Ct. R. 323 (eff. July 1, 2017)). Therefore, we must accept the accuracy of these written orders and "assume that defendant was correctly admonished regarding trial *in absentia*." *People v. Martinez*, 361 Ill. App. 3d 424, 427 (2005).

¶ 20    Defendant suggests in his reply brief that the language of the October 17, 2014, orders does not foreclose the possibility that he was given written rather than oral in-*absentia* warnings. As the appellant, however, defendant bears "the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error," and we must resolve any doubts which arise from the incompleteness of the record against him. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Contrary to what defendant argues, it is not an "unreasonable request" to require him to provide a complete record. Although no court reporter was present on October 17, 2014, Rule 323(c) allows for the preparation of a bystander's report using "the best available sources, including recollection." That rule also permits a party to "request from the court official any

recording of the proceedings." Defendant provides no indication that he investigated the possibility of preparing a bystander's report for the October 17, 2014, proceedings.

¶ 21 Defendant has failed to demonstrate error, and he has thus failed to meet his burden under the plain-error doctrine.

¶ 22                                                    B. Text Messages

¶ 23 Defendant also argues that the court erred in admitting photographs of the text message exchange between Officer Wells, Gigi, and "Don," because the texts lacked the proper authentication and foundation. In support if his argument, defendant mentions that: (1) the messages were from one specific telephone number, (2) Gigi, not defendant, gave that number to Officer Wells, (3) most of the messages relating to the delivery of a controlled substance were from Gigi, (4) Officer Wells acknowledged that there were times during the text exchange when he was confused as to whether he was texting with Gigi or Don, (5) there was no evidence as to whom the phone number at issue was registered, (6) there was no testimony authenticating the identity of the person using the phone number, and (7) Officer Wells did not witness the other parties sending the text messages. Defendant proposes that the error was not harmless, as the contents of the text messages "went to the crux of the charge of delivery of a controlled substance." The State responds that the court did not abuse its discretion by allowing the text messages into evidence, because the messages were authenticated by circumstantial evidence. Moreover, the State insists that any error was harmless, given that the text messages merely provided context for the drug transaction and did not themselves prove the elements of the offense.

¶ 24 We review the court's decision to admit documentary evidence for an abuse of discretion. *People v. Ziemba*, 2018 IL App (2d) 170048, ¶ 50. "A trial court abuses its discretion where its

decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the court's view." *Ziemba*, 2018 IL App (2d) 170048, ¶ 50. In *Ziemba*, we explained as follows:

"As to a proper foundation for admission, text messages are treated like any other form of documentary evidence. A proper foundation is laid for the admission of documentary evidence when the document has been identified and authenticated. Authentication of a document requires the proponent to present evidence that the document is what the proponent claims it to be. The proponent need prove only a rational basis upon which the fact finder can conclude that the document did in fact belong to or was authored by the party alleged. The court's finding of authentication is merely a finding that there is sufficient evidence to justify presentation of the offered evidence to the trier of fact and does not preclude the opponent from contesting the genuineness of the writing after the basic authentication requirements are satisfied. If the court, after serving its screening function, allows the evidence to be admitted, the issue of the document's authorship is ultimately for the jury to determine." (Internal citations and quotation marks omitted.) *Ziemba*, 2018 IL App (2d) 170048, ¶ 51.

Furthermore,

"Documentary evidence, such as a text message, may be authenticated by either direct or circumstantial evidence. Circumstantial evidence of authenticity includes such factors as appearance, contents, substance, and distinctive characteristics, which are to be considered with the surrounding circumstances. Documentary evidence, therefore, may be authenticated by its contents if it is shown to contain information that would be known only by the alleged author of the document or, at the very least, by a small group of people

including the alleged author." (Internal citations omitted.) *Ziemba*, 2018 IL App (2d) 170048, ¶ 52.

¶ 25 Defendant relies on *People v. Watkins*, 2015 IL App (3d) 120882, where the appellate court determined that the State failed to lay a proper foundation for the admission of photographs depicting text messages in a case where the defendant was charged with unlawful possession of a controlled substance with intent to deliver. In *Watkins*, upon executing a search warrant inside of a home were the defendant and five other people were present, the officers found drugs and multiple cellular phones in an open kitchen drawer. *Watkins*, 2015 IL App (3d) 120882, ¶¶ 11-12. One of those cellular phones contained drug-related text messages that were directed to someone named "Charles," which happened to be the defendant's first name. *Watkins*, 2015 IL App (3d) 120882, ¶¶ 16-17. Notably, however, there was no evidence of what phone number was associated with this phone, and there was no indication from the phone itself that defendant was the owner. *Watkins*, 2015 IL App (3d) 120882, ¶ 24. Under these circumstances, the appellate court determined that the evidence was insufficient to authenticate the text messages as having been sent to the defendant. *Watkins*, 2015 IL App (3d) 120882, ¶ 38. In so holding, the court emphasized that the police officer who identified the photographs of the text messages at trial "had no personal knowledge of the text messages and had no idea who was the owner or user of the cell phone." *Watkins*, 2015 IL App (3d) 120882, ¶ 38.

¶ 26 Unlike the officer who testified in *Watkins*, Officer Wells personally participated in the subject text message exchange. He also participated in the drug transaction that was arranged through this exchange of messages. Officer Wells testified that the photographs that were admitted into evidence depicted the messages that he sent and received on April 17 and 18, 2014. Officer Wells' testimony provided a rational basis for the trial court to determine, as part of its screening

function, that the documents were what Officer Wells claimed them to be. See *In re Marriage of LaRocque*, 2018 IL App (2d) 160973, ¶ 78 (a party to a divorce proceeding properly authenticated his text messages with his wife where he testified that the printouts "accurately depicted messages that the parties sent each other").

¶ 27    Additionally, unlike in *Watkins*, there was strong circumstantial evidence supporting a conclusion that Officer Wells texted with both Gigi and defendant. Officer Wells met Gigi around April 17, 2014, and she provided him with her telephone number. Over the next few days, Officer Wells exchanged numerous text messages with the number that Gigi provided and arranged a drug transaction. From the contents of the messages, it is apparent that Gigi responded to many of Officers Wells' messages. A person identifying himself as "Don," however, who purported to be Gigi's "old man," responded to a few of Officer Wells' messages. On the day of the arranged drug transaction, Gigi called Officer Wells from this same phone number, and he recognized her voice. Gigi ultimately showed up for the scheduled drug transaction in a truck that was driven by a male. The police ran the truck's plates and determined that it was registered to defendant, whose first name is Donevin. Officer Wells then identified defendant from a photograph as the man who drove the truck and handed him the heroin. Under these circumstances, there was ample circumstantial evidence that Gigi and defendant participated in the text message exchange. The court did not abuse its discretion in admitting this evidence.

¶ 28                               C. Correction of the Mittimus

¶ 29    We take this opportunity to correct the mittimus on our own accord.

¶ 30    As explained above, defendant was originally charged by complaint with both unlawful delivery of a controlled substance within 1000 feet of a church (720 ILCS 570/407(b)(2) (West 2014)), a Class 1 felony, and unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i)

(West 2014)), a Class 2 felony. The Class 2 charge was a lesser-included offense of the Class 1 charge, and the only difference between the charges was the enhancing element that the unlawful delivery occurred near a specified location. See *People v. Newton*, 2018 IL 122958, ¶¶ 15-16; *People v. Knaff*, 314 Ill. App. 3d 676, 679 (2000). Defendant was subsequently indicted only on the Class 1 charge. After the State rested its case, the court granted defendant's motion for a directed verdict, given that the State failed to produce evidence that the drug transaction took place within 1000 feet of an operational church. Relying on *Knaff*, the court allowed the State to proceed on "the lesser included of the delivery of a controlled substance less than one gram." The court did not specify the statutory citation for that lesser-included offense, either on the record or in its written order. The jury verdict form likewise indicates that defendant was found guilty of "delivery of a controlled substance" but does not specify a statutory citation.

¶ 31    At the sentencing hearing, the parties and the court agreed that the conviction at issue was for a Class 2 felony and that defendant would nevertheless be sentenced as a Class X offender due to his criminal history. The sentencing order indicates that defendant was sentenced to 10 years in prison for a violation of section 407(a)(2)(B) of the Act (720 ILCS 570/407(a)(2)(B) (West 2014)). That section provides that it is a Class 2 felony to violate section 401 of the Act on or within a specified proximity (formerly 1000 feet, now 500 feet) of a truck stop or a safety rest area. There was no evidence at trial that the drug transaction at issue occurred near a truck stop or a safety rest area, so it is obvious that the citation to this provision in the sentencing order was incorrect.

¶ 32    Based on the court's discussion of *Knaff* during its ruling on defendant's motion for a directed verdict, it is apparent that the lesser charge of which defendant was convicted was contained in section 401(d)(i) of the Act. That section provides, in relevant portion: "Any person

who violates this Section with regard to any other amount of a controlled or counterfeit substance *** classified in Schedules I or II, or an analog thereof, which is (i) a narcotic drug, * * * is guilty of a Class 2 felony." 720 ILCS 570/401(d)(i) (West 2014). Accordingly, we correct the mittimus to reflect that defendant was convicted of a violation of section 401(d)(i) of the Act.

¶ 33                                          III. CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the circuit court of Kane County as modified.

¶ 35    Affirmed as modified.