2024 IL App (1st) 230299-U

No. 1-23-0299

Order filed November 26, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 17059 |
| | ) | |
| NARCISO SUASTEGUI-RAMIREZ, | ) | Honorable |
| | ) | Joseph M. Cataldo, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm defendant's convictions for predatory criminal sexual assault and aggravated criminal sexual abuse over his contentions that (1) the trial court should have granted his motion for a mistrial, (2) the trial court should not have admitted into evidence a transcript of defendant's statement to police, translated into English, without a jury instruction as to that transcript, (3) the evidence was insufficient to prove defendant's guilt beyond a reasonable doubt, and (4) trial counsel rendered ineffective assistance.

¶ 2   A jury found defendant Narciso Suastegui-Ramirez guilty of predatory criminal sexual assault and aggravated criminal sexual abuse. The trial court sentenced him to 14 years in prison.

On appeal, defendant argues that (1) the trial court should have granted his motion for a mistrial, (2) the trial court should not have admitted a transcript of defendant's statement to police, translated from Spanish to English, without a jury instruction as to that transcript, (3) the State failed to prove defendant guilty beyond a reasonable doubt, and (4) trial counsel rendered ineffective assistance. For the following reasons, we affirm.

¶ 3                                              I. BACKGROUND

¶ 4      The State charged defendant with one count of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2014)) and four counts of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)). The charges arose from defendant's sexual abuse of his niece, K.B., between June 20, 2014, and June 19, 2018, when K.B. was under 13 years of age.

¶ 5      This case was tried twice. The first trial resulted in a mistrial because the jury was unable to reach a verdict. This appeal concerns the second trial.

¶ 6                          A. Section 115-10 Motion to Admit K.B.'s Statements

¶ 7      Prior to trial, the State filed a motion pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 115-10 (West 2014)) to admit K.B.'s statements reporting defendant's sexual abuse to two of her friends, A.L. and S.J, and to forensic interviewer Karielis Jusino.[1] Only K.B.'s statement to A.L. is at issue in this appeal.[2]

¶ 8      At a hearing on the State's motion, A.L. testified that K.B. was his friend and seventh grade classmate. During a video call when K.B. was 11 years old and in sixth grade, she told A.L. that

_____

[1]Section 115-10 allows a trial court to admit a child sex abuse victim's hearsay statement if the court deems the statement reliable and the child testifies at trial (725 ILCS 5/115-10(b)(1), (b)(2)(a) (West 2014)) or if the child does not testify but the statement is deemed reliable, and the allegations of sexual abuse are independently corroborated (*id.* §§ (b)(1), (b)(2)(B)).

[2]As of the filing of this order, A.L. and S.J. are minors, so we use their initials.

defendant raped her at her home when she was 8 or 9 years old. K.B. appeared sad and scared during this call and said she had not told anyone else. Two to three weeks after that conversation, A.L. and K.B. were at a movie theater with another friend when K.B. described defendant removing her clothes and touching her when they were in a room together. During that incident, a nephew knocked on the door and defendant said the nephew could not enter because he and K.B. "were working on something."

¶ 9     The trial court granted the State's motion to admit K.B.'s statements. The court reasoned that K.B.'s outcry to A.L. was reliable because it was spontaneous, K.B. had no reason to lie, and her description of the sex acts in question was consistent with her age.

¶ 10                              B. Motion to Suppress Defendant's Statement

¶ 11     Also prior to trial, defendant filed a motion to suppress his statement to Prospect Heights police. Defendant alleged that police did not provide *Miranda* warnings and threatened to arrest his wife and daughter if he did not cooperate.

¶ 12     At a hearing on the motion, Prospect Heights sergeant Jesus Duron testified that defendant was arrested on November 15, 2019, and arrived at the Prospect Heights police station at approximately 6 p.m. that evening. Duron and detective sergeant Bill Caponigro interviewed defendant at approximately 9:20 a.m. the following day. During the interview, Caponigro asked questions and Duron translated between Caponigro's English questions and defendant's Spanish responses. Caponigro read *Miranda* warnings while Duron and defendant reviewed a Spanish-language *Miranda* form, which defendant initialed and signed. In court, Duron identified the *Miranda* form defendant signed, and the State moved it into evidence. The *Miranda* form is included in the record on appeal. It is a single page titled "Constitutional Rights Waiver SPANISH"

and is otherwise entirely in Spanish. The handwritten initials "NS" appear next to four sentences. The signatures of defendant, Caponigro, and Duron appear at the bottom of the form. Duron denied that he or Caponigro threatened to arrest defendant's wife or daughter.

¶ 13    Duron also identified a video recording of defendant's interview, which the State moved into evidence. Relevant here, the video depicts defendant, Duron, and Caponigro in a small room with three chairs and a table. Defendant is not handcuffed and does not appear to be in any distress. Caponigro speaks in English and defendant speaks in Spanish; Duron translates. Caponigro reads *Miranda* warnings in English while Duron and defendant follow along on a form. Duron reads the *Miranda* warnings aloud in Spanish as well. Defendant verbally confirms that he understands his *Miranda* rights, initials and signs the form, and agrees to speak with the officers. Defendant states he has been treated well at the police station, has been given food and water, and is not under the influence of drugs or alcohol. We summarize the substance of defendant's statement below because the State introduced it at trial.

¶ 14    Defendant testified that Prospect Heights police arrested him at his work on November 15, 2019, and transported him to a police station. In a hallway outside an interview room, Duron said he would arrest defendant's wife and daughter if they "bother[ed] the girl" or if defendant refused to give a statement. As a result, defendant "felt pressure" to give a statement to police. Police read defendant his *Miranda* rights but defendant "was nervous, and [he] didn't know what was going on." Defendant acknowledged that he signed the *Miranda* form and that the video recording showed him telling police he understood his *Miranda* rights, but he testified that he "didn't understand."

¶ 15    Defendant argued that he signed the *Miranda* waiver form under coercion "due to his lack of English" and Duron's threat to arrest his wife and daughter, and that there was no indication he actually understood his *Miranda* rights. The State maintained that no *Miranda* violation occurred because defendant initialed and signed a Spanish-language *Miranda* form that Duron reviewed with him. The State also highlighted that defendant confirmed that police treated him well, never asked for an attorney, and never invoked his right to remain silent. The State argued that although defendant may have been nervous during his statement to police, there was no evidence he was coerced into making an involuntary statement.

¶ 16    The court denied defendant's motion to suppress. The court reasoned that Duron and Caponigro provided *Miranda* warnings "one-by-one very slowly." Defendant confirmed his understanding of those warnings verbally and by initialing and signing the Spanish-language *Miranda* form. Defendant also acknowledged that police treated him well and exhibited no signs of distress during the interview. Therefore, the court concluded, defendant's statement to police was knowing and voluntary.

¶ 17                    C. Motion *in Limine* to Admit Transcript

¶ 18    Prior to the second trial, the State moved *in limine* to admit a transcript of defendant's statement to police translated into English. The transcript is included in the record on appeal. It was prepared by Marcela Aranda, is 57 pages long, and entirely in English. The first page notes that Duron and Caponigro were present for defendant's statement, but otherwise, the transcript does not indicate which of them is speaking. Rather, it uses "Q" for the officers' questions and "A" for defendant's answers.

¶ 19 Defendant objected to the transcript as "hearsay testimony *** by another individual who is interpreting what they think happened during the interrogation of the defendant." However, defendant did not identify any translation errors in the transcript and stipulated to the translator's qualifications. The State maintained that the transcript was not hearsay; rather, it was "a translation of statements made by a party opponent." The court admitted the transcript but allowed defendant to raise disputes about the accuracy of the translation if he discovered any. He did not.

¶ 20                                     D. Second Jury Trial

¶ 21 At the second trial, the State proceeded on one count of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2014)) premised on defendant's penis penetrating K.B.s vagina and one count of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)) premised on defendant kissing K.B. on the mouth.

¶ 22 K.B. testified that she was 14 years old and a freshman in high school at the time of the second trial. From her birth in 2008 to 2018, K.B. lived in an apartment in Prospect Heights. Defendant, her uncle, lived in another apartment in the same building along with his wife and children, *i.e.*, K.B.'s aunt and cousins. K.B. visited defendant's apartment often as a young child. When she was in third or fourth grade, K.B. hid in defendant's bedroom while playing hide-and-seek. Defendant entered and kissed K.B.'s lips and neck. K.B.'s cousin came "barging in looking for [her]" and defendant "proceeded to jump off [K.B.] and act like nothing happened."

¶ 23 When K.B. was eight years old and in fourth grade, she and defendant were alone while K.B.'s aunt and cousins went to the store to buy lice medication for her. Defendant took K.B. into his bedroom, laid her on the bed, kissed her, removed both of their shirts, and kissed and massaged K.B.'s chest. Defendant thought K.B.'s aunt and cousins had returned, so he put his and K.B.'s

shirts back on and took K.B. to the kitchen as though "nothing ever happened." When defendant realized that K.B.'s aunt and cousins had not returned, he took K.B. to the living room, laid her on the couch, removed her shirt, and began kissing her again. Defendant then removed his and K.B.'s pants and underwear and inserted the tip of his erect penis into her vagina. Defendant also tried to place K.B.'s hand on his penis but she pulled her hand away. When K.B.'s aunt and cousins returned, she and defendant got dressed and "went into the kitchen and [she] had to act like nothing had ever happened." On other occasions when defendant and K.B. were alone in the kitchen, defendant placed K.B. on the counter, kissed her, and "dry hump[ed]" her by rubbing his erect penis against her vagina through their clothes.

¶ 24    When defendant began sexually abusing K.B., he told her it "was [their] secret and not to tell anyone." Defendant's behavior made K.B. "scared and uncomfortable" and she tried to avoid him when she was at his apartment. K.B. did not tell any family members about defendant's behavior, but she did tell her mother that she did not want to go to defendant's apartment anymore, which her mother believed was due to an argument with a cousin. During a phone call in 2019, when she was in sixth grade, K.B. told her friend A.L. "about what happened." Approximately two weeks later, K.B. told her friend S.J. that defendant "rape[d]" her. In November 2019, K.B. spoke to a woman at the Children's Advocacy Center in Hoffman Estates about these incidents.

¶ 25    Defendant moved for a mistrial because the State indicated it would not call A.L. after eliciting K.B.'s testimony that she made an "outcry *** hearsay statement" to A.L. In the alternative, defendant asked the court to instruct the jury to disregard K.B.'s testimony regarding her outcry to A.L. The State argued that it did not elicit hearsay; rather, it elicited *that* K.B. told A.L. about defendant's sexual abuse of her but not *what* she told A.L. The court denied defendant's

motion for a mistrial, explaining that the State was allowed to decide not to call A.L. However, the court agreed to instruct the jury to disregard K.B.'s testimony about her conversation with A.L.

¶ 26   S.J. testified that she was 14 years old and a freshman in high school. S.J. and K.B. were friends and classmates when they were in sixth grade. During a school presentation about sexual assault, K.B. told S.J. "that her uncle had touched her inappropriately" when she was in first grade. K.B. "looked like she was holding back tears" and "was scared to speak on what happened." K.B. also said that she was scared to tell adults about defendant sexually abusing her. The following day, K.B. cried during gym class and told S.J. that she wanted to tell an adult.

¶ 27   Prospect Heights detective sergeant Kevin Lange testified that he scheduled an interview of K.B. at the Children's Advocacy Center in Hoffman Estates for November 15, 2019. Lange observed the interview through a one-way mirror. The interviewer showed K.B. diagrams of a naked boy and girl, which Lange identified in court. He also identified circles K.B. drew around the male diagram's penis and the female diagram's vagina. The State moved both diagrams into evidence. In addition, Lange identified a video recording of K.B.'s interview, which the State moved into evidence.

¶ 28   The video of K.B.'s interview is included in the record on appeal. Jusino interviews K.B. for approximately 50 minutes. K.B. states that defendant began sexually abusing her when she was six or seven years old. She first describes an incident in which she was playing hide-and-seek with her cousin Jackie. Defendant pulled K.B. into a room, laid on top of her, and kissed her neck. After removing K.B.'s shirt, defendant kissed her torso. Jackie opened the door and defendant "jumped off" K.B. K.B. then describes an incident in which defendant pushed her onto the kitchen counter and "hump[ed]" her. When K.B.'s aunt came home, defendant stopped and acted like nothing

happened. During a third incident when K.B. was in elementary school, K.B.'s aunt and cousins went to the store, leaving K.B. and defendant at home. Defendant pulled K.B. into his bedroom, removed his and K.B.'s pants, and "hump[ed]" her. Defendant's body "felt heavy and it hurt;" K.B. felt "really uncomfortable" and "wish[ed] it was just a dream." Defendant then took K.B. to the living room, removed his and K.B.'s underwear, and was "basically raping her" by putting his "down there" in her "down there." During the interview, K.B. circles the male and female "down there" on two diagrams. K.B. did not see defendant's "down there." Defendant tried to force K.B. to touch his "down there" but she pulled her hand back. K.B. was "trying to get out his grip" but was scared defendant would hit her. When K.B.'s aunt came home, defendant acted like nothing happened and took a shower. At some point, defendant told K.B. not to tell anyone and that it was "[their] secret." K.B. was eight or nine years old the last time defendant sexually abused her. The year of the interview, K.B. told her friends S.J. and A.L. that defendant "tried to force himself on top of her."

¶ 29 Prospect Heights police chief Bill Caponigro testified that, on November 16, 2019, he was a detective sergeant assigned to interview defendant. Duron translated between Spanish and English during the interview. Caponigro read defendant his *Miranda* rights while Duron and defendant read along using a Spanish-language *Miranda* form. Defendant initialed each line of the *Miranda* form, signed it, and agreed to speak with Caponigro. Caponigro told defendant he could stop speaking at any time and defendant indicated he understood.

¶ 30 Caponigro testified that defendant stated K.B. was his niece and acknowledged that he and K.B. had physical contact in the form of "playful rough-housing." Defendant initially denied that he and K.B. were ever unclothed together and denied touching her inappropriately. However,

defendant described an incident in 2015 or 2016 when K.B. was approximately eight years old. Defendant claimed that K.B. "act[ed] flirtatious" and "hot," lowered her pants, and bent over in front of him while they were alone in his bedroom. Defendant exposed his penis and rubbed it against her vagina. Defendant described this incident as going "a little too far" due to "temptation" but denied that his penis penetrated K.B.'s vagina. Approximately two weeks after that incident, defendant "intimate[ly] kiss[ed]" K.B. Defendant denied telling K.B. to keep these incidents secret. Caponigro identified a recording of defendant's statement and the *Miranda* form defendant signed, and the State moved both items into evidence. The *Miranda* form is as described above.

¶ 31     Marcela Aranda testified that she was a certified Spanish translator employed by the Cook County State's Attorney's Office. She transcribed and translated the video of defendant's statement to Duron and Caponigro. Aranda identified the transcript she produced, and the State moved it into evidence.

¶ 32     Sergeant Duron testified consistent with his testimony at the hearing on defendant's motion to suppress. He added that Aranda's translation of defendant's statement was accurate.

¶ 33     The video recording of defendant's statement to Duron and Caponigro is included in the record on appeal. Defendant states that K.B. is his niece. She sometimes stayed at his apartment. K.B. threw herself on top of defendant when they would "play[ ] rough" but defendant denies that he and K.B. have ever been unclothed together. K.B. is "flirtatious" but defendant denies "forc[ing] her to do anything" and states that he never "put a knife to her." When the officers mention defendant having sex with K.B., defendant describes an incident in which his wife went to the store to get medication and defendant was home with his son and K.B. Defendant was folding clothes in his bedroom when K.B. entered and hugged him. K.B. then pulled her underwear down

and defendant "let [him]self go at that moment." He "didn't have sex" with K.B. but was hugging her with his "private part" out. K.B. was "very excited" and "hot," "[l]ike she wanted to do something else," possibly including having sex. K.B. "wanted [defendant] to penetrate her" and defendant "let [him]self go" by putting his penis on her vagina without penetrating her, like "play[ing] with your finger on a woman." K.B. was approximately eight years old at the time of this incident. Approximately two weeks later, defendant kissed K.B. "with tongue *** like something intimate." Defendant denies telling K.B. "this is our secret" or telling her not to tell anyone.

¶ 34    The parties stipulated that defendant was 17 years of age or older between June 20, 2014, and June 19, 2018. The State rested.

¶ 35    Defendant testified through a Spanish-language interpreter. His testimony regarding his arrest and statement to Prospect Heights police was essentially consistent with his testimony at the hearing on his motion to suppress. He added that when Duron took him out of the holding cell to be interviewed, defendant asked if he could see his wife and children, and Duron responded, "[P]robably, yes." Defendant denied that he touched K.B. inappropriately, kissed her on the mouth, or touched his penis to her vagina. However, he acknowledged telling police about rubbing his penis against K.B.'s vagina in his bedroom when K.B. was approximately eight years old. Defendant also acknowledged telling police he kissed K.B. "intimate[ly]" on other occasions." He denied telling K.B. to keep these incidents secret.

¶ 36    Jacqueline Suastegui testified that defendant is her father and K.B. is her cousin. Jacqueline is four years older than K.B. K.B. visited defendant's apartment "rarely" between 2014 and 2018. Defendant worked two jobs during that time, from 6 a.m. to 11 p.m., often six days a week. On

one occasion in 2014, K.B. was at the apartment when Jacqueline's mother (K.B.'s aunt) discovered that K.B. had lice. Defendant was not home; he was at work. Jacqueline's mother took K.B., Jacqueline, and other cousins to the store to get lice medication. Jacqueline did not know of any instances in which K.B. and defendant were alone together. Jacqueline denied that defendant ever touched K.B. inappropriately.

¶ 37    Ana Hobbs testified that defendant is her stepfather and K.B. is her cousin. Hobbs lived with defendant from 2014 to 2016. During that time, K.B. visited defendant's apartment once every month or two. Defendant worked two jobs and was not home often, and Hobbs never saw him alone with K.B. When K.B. had lice, she accompanied her aunt and Hobbs to the store to get medication. Defendant was at work that evening. K.B. never seemed uncomfortable around defendant and never indicated she did not want to be at his apartment.

¶ 38    In rebuttal, the State recalled Duron, who testified that he never mentioned defendant's wife or children when defendant was at the Prospect Heights police station.

¶ 39    During the jury instructions conference, neither party proposed an instruction regarding the transcript of defendant's statement. The jury requested and was given copies of that transcript without objection from defendant.

¶ 40    The trial court instructed the jury to "disregard any testimony regarding conversations between [K.B.] and [A.L.]"

¶ 41    The jury found defendant guilty on both counts.

¶ 42                                    E. Posttrial Proceedings

¶ 43    Defendant filed a motion for new trial. He argued that that the trial court erred by allowing the State to elicit K.B.'s statement to A.L. even though A.L. did not testify. Defendant also

contended that the court erred in admitting the transcript of his statement to Prospect Heights police. In addition, defendant argued that the State failed to prove him guilty beyond a reasonable doubt.

¶ 44    The trial court denied defendant's motion. Regarding A.L., the court explained that "the State can choose to call or not call witnesses as a trial strategy" and "does not have to inform [the] [d]efense of witnesses they choose not to call." The court noted that defendant could have called A.L. "to prove up any impeachment if [he] felt that was necessary" and that the jury was told to disregard testimony about K.B.'s conversation with A.L. The court also explained that there was no dispute about the accuracy of the transcript of defendant's statement; therefore, the transcript's admission aided the jury and did not unfairly prejudice defendant. Finally, the court concluded that the evidence was sufficient to prove defendant guilty given his video-recorded confession and K.B.'s credibility.

¶ 45    The trial court sentenced defendant to 14 years in prison. Defendant filed a motion to reconsider sentence, which the court denied.

¶ 46    Defendant timely appealed.

¶ 47                                II. ANALYSIS

¶ 48    On appeal, defendant argues that (1) the trial court should have granted his motion for a mistrial, (2) the court erred by admitting the transcript of his statement to police without a jury instruction as to that transcript, (3) the evidence was insufficient to prove his guilt beyond a reasonable doubt, and (4) trial counsel rendered ineffective assistance.

¶ 49                             A. Motion for Mistrial

¶ 50    Defendant first contends that the trial court should have granted his motion for a mistrial because the State elicited that K.B. told A.L. that defendant sexually abused her but did not call A.L. as a witness.

¶ 51    A trial court should grant a mistrial when a grave error has affected the fundamental fairness of the trial such that continuing the trial would defeat the ends of justice. *People v. Nelson*, 2021 IL App (1st) 181483, ¶ 30 (citing *People v. Sims*, 167 Ill. 2d 483, 505 (1995)). We will reverse a trial court's denial of a motion for a mistrial only if the trial court abused its discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is fanciful, arbitrary, or so unreasonable that no reasonable person would agree with it. *Id.* (citing *People v. Ortega*, 209 Ill. 2d 354, 359 (2004)).

¶ 52    Defendant's motion for a mistrial concerned K.B.'s outcry to A.L., which the trial court admitted pursuant to section 115-10. Section 115-10 allows a trial court to admit a child victim's hearsay outcry statement in two scenarios. The first is when the court deems the statement reliable and the child testifies at trial. 725 ILCS 5/115-10(b)(1), (b)(2)(a) (West 2014); *People v. Kitch*, 239 Ill. 2d 452, 467 (2011). The second is when the child does not testify but the statement is deemed reliable, and the allegations of sexual abuse are independently corroborated. *Id.* §§ (b)(1), (b)(2)(B); *Kitch*, 239 Ill. 2d 452, 467. This case involves the first scenario because K.B. testified at trial.

¶ 53    On direct examination, K.B. testified as follows:

> "Q. Okay. And who else did you tell besides that social worker about what happened?
>
> A.  The dean and two of my friends.

Q. What are your friends' names?

A. [A.L.] and [S.J.]."

This testimony is not hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). The State did not offer K.B.'s testimony that she told A.L. "what happened" to prove that defendant sexually abused her. Rather, the State elicited that testimony to explain how defendant's sexual abuse came to light in 2019 and led to his arrest that November. A child sex abuse victim testifying that she told a friend "what had happened" is not hearsay. *People v. Cole*, 193 Ill. App. 3d 990, 995 (1990) (abrogated on other grounds by *People v. Schott*, 145 Ill. 2d 188 (1991)). Because section 115-10 governs only the admission of hearsay, K.B.'s testimony does not implicate section 115-10 at all.

¶ 54 Furthermore, the invited error doctrine bars defendant's argument on this point. "[W]hen a defendant procures, invites, or acquiesces in the admission of evidence, even though the evidence was improper, [ ]he cannot contest the admission on appeal." *People v. Bush*, 214 Ill. 2d 318, 332 (2005). Defendant did not object to K.B.'s direct examination testimony set out above. Then, on cross-examination, defendant elicited that K.B. told A.L. her "uncle touched [her] and that he raped [her]." As defendant's brief acknowledges, "while both parties elicited testimony about the outcry [to A.L.], defense counsel cross-examined K.B. on its substance." Defendant cannot now claim that the trial court should have declared a mistrial simply because K.B. mentioned A.L. on direct. To the extent any error occurred, the trial court corrected it by instructing the jury to disregard K.B.'s testimony about her conversation with A.L. See *People v. Middleton*, 2018 IL App (1st) 152040, ¶ 29 ("for a reversal following the denial of a motion for a mistrial, the appellant must

show \*\*\* that the resulting damage could not be remedied by the court's admonitions and instructions.").

¶ 55    Defendant argues that the State improperly "corroborate[d] [K.B.'s] outcry without actually calling" A.L. We disagree. A complaining witness testifying that she reported the defendant's conduct to another person is not "corroboration" of her own testimony. Corroboration would be A.L. testifying consistent with K.B.'s description of events. That did not occur because A.L. did not testify.

¶ 56    Defendant also suggests that he was unfairly surprised by the State's decision not to call A.L. after A.L. was mentioned during opening statements and K.B.'s direct examination. We cannot see how the absence of A.L.'s testimony, which would have bolstered the State's case assuming A.L. testified as he did at the section 115-10 hearing, prejudiced defendant. See *id.* Moreover, "[i]n a criminal prosecution, the State is not required to call every witness listed by it as witnesses who may be called in its case." *People v. Tillman*, 82 Ill. App. 3d 430, 436 (1980); see also *People v. Walker*, 253 Ill. App. 3d 93, 106 (1993) (the State may choose not to call an outcry witness at the second trial even if that witness testified at the first trial.). Accordingly, we affirm the trial court's denial of defendant's motion for a mistrial.

¶ 57                          B. Transcript of Defendant's Statement

¶ 58    Defendant next contends that the court erred by admitting the transcript of his statement to Prospect Heights police, which Marcela Aranda prepared and translated into English, without giving Illinois Pattern Jury Instruction, Criminal, No. 3.20.[3] Illinois Pattern Jury Instructions,

---

[3]To the extent defendant argues that the trial court erred by admitting the transcript as substantive evidence regardless of the jury instructions, we disagree. When a recording contains statements in a

Criminal, No. 3.20 (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.20). Defendant acknowledges that he forfeited this argument because he did not propose a jury instruction regarding the transcript. See *People v. Hartfield*, 2022 IL 126729, ¶ 44 ("Generally, a defendant forfeits review of any putative jury instruction error if the defendant does not object to the instruction or offer an alternative instruction at trial.") (Internal quotation marks omitted.). However, he requests that we review this issue for plain error.

¶ 59    Plain error occurs when "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Id.* ¶ 50. Relatedly, Supreme Court Rule 451(c) provides that "substantial defects [in criminal jury instructions] are not waived by failure to make timely objections thereto if the interests of justice require." Ill. S. Ct. R. 451(c) (eff. Apr. 8, 2013). "Rule 451(c) is coextensive with the 'plain error' clause of Supreme Court Rule 615(a), and we construe these rules identically." (Internal quotation marks omitted.) *Hartfield*, 2022 IL 126729, ¶ 49. A "jury instruction rises to the level of plain error only when it creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law." (Internal quotation marks omitted.) *Id.* ¶ 50. "Inherent in plain-error analysis is a determination of whether any error occurred." *Id.* ¶ 51. "The function of jury instructions is to provide the jury with accurate legal principles to apply to the evidence so it can reach a correct conclusion." *Id.* "We must determine whether the instructions, taken as a whole, fairly, fully, and comprehensively apprised

---

foreign language, it is proper for the trier of fact to rely on a translated transcription of the statement as substantive evidence. *People v. Betance-Lopez*, 2015 IL App (2d) 130521, ¶¶ 31-33.

the jury of the relevant legal principles." (Internal quotation marks omitted.) *Id.* We review *de novo* whether the jury instructions accurately conveyed the appliable law. *Id.*

¶ 60     At the time of defendant's second trial in October 2022, IPI Criminal No. 3.20 was the only criminal IPI that addressed transcripts. Had the trial court given that instruction, it would have read:

> "An electronic recording has been admitted into evidence. In addition to the electronic recording[,] you are being given a transcript of the electronic recording. The transcript only represents what the transcriber believes was said on the electronic recording, and merely serves as an aid when you listen to the electronic recording. The electronic recording, and not the transcript, is the evidence. If you perceive a conflict between the electronic recording and the transcript, the electronic [recording] controls." See IPI Criminal No. 3.20.

¶ 61     However, at the time of trial, courts did not agree on whether IPI Criminal No. 3.20's rule that the recording rather than the transcript is the evidence, and the transcript is merely a listening aid, applied to a transcript that contained translations of non-English statements. *Betance-Lopez*, 2015 IL App (2d) 130521, ¶¶ 30-31 (citing *People v. Criss*, 307 Ill. App. 3d 888, 901 (1999)). In *Betance-Lopez*, the court reasoned that "[w]here a recording contains statements in a foreign language, it would be impractical, or even impossible, to require the trier of fact to rely on the recording to the exclusion of an English-translation transcript." *Id.* ¶ 33. In addition, giving "the usual admonition that the [recording] is the evidence and the transcript only a guide is not only nonsensical, it has the potential for harm where the jury includes bilingual jurors." *Id.* ¶ 32. That is, IPI Criminal No. 3.20 does not account for a situation in which an English-speaking juror might

ask a bilingual juror to translate a recording of a statement in a non-English language. Given these concerns, the Second District held that when a recording contains statements in a foreign language, the trier of fact may rely on a translated transcript of the recording as substantive evidence. *Id.* ¶¶ 31-33.

¶ 62    In 2024, the IPIs were amended in response to *Betance-Lopez*. IPI Criminal No. 3.20 is now titled "Use Of Transcripts of Tape-Recorded English Conversations," and the committee notes state that the instruction should be used "only when the original recording is in English." IPI Criminal No. 3.20 (approved Apr. 26, 2024). A new instruction governs non-English recordings. Illinois Pattern Jury Instructions, Criminal, No. 3.20B (approved Apr. 26, 2024) (hereinafter IPI Criminal No. 3.20B). The committee notes state that IPI Criminal No. 3.20B should be given "when the original recording is not in English. In these circumstances, do not give Instruction 3.20." *Id.* If IPI Criminal No. 3.20B existed at the time of defendant's second trial, it would have read:

> "You have watched a recording in the Spanish language. You have been given a transcript of the recording that has been admitted into evidence. The transcript is an English-language translation of the recording.
>
> Although some of you may know the Spanish language, it is important that all jurors consider the same evidence. The transcript is the evidence, not the foreign language spoken in the recording. Therefore, you must accept and rely only on the English translation contained in the transcript. Disregard any perceived different meaning. Do not comment to fellow jurors on what you heard in the Spanish language. Do not reinterpret for other jurors

evidence that has been translated because that would be providing information not admitted in court." See *id.*

Of course, the trial court did not err by not giving IPI Criminal No. 3.20B, which did not exist at the time of defendant's trial.

¶ 63    The question is whether the court committed plain error by not giving the previous version of IPI Criminal No. 3.20. We find that it did not. In October 2022, IPI Criminal No. 3.20 did not address a transcript that was also a translation of a non-English statement. Some case law at the time would have supported giving IPI Criminal No. 3.20. See, *e.g.*, *Criss*, 307 Ill. App. 3d at 899-900. On the other hand, *Betance-Lopez* would have weighed against giving that instruction. See *Betance-Lopez*, 2015 IL App (2d) 130521, ¶¶ 31-33.[4] Defendant's trial occurred when Illinois case law and the IPIs were not clear as to translated transcripts of non-English statements. So, we cannot say that the trial court committed plain error by not giving IPI Criminal No. 3.20. *In re M.W.*, 232 Ill. 2d 408, 431 (2009) (error is not plain if the law was unclear at the time of trial). While admitting the transcript with *no* jury instruction was not ideal, we are not persuaded there is a serious risk the jury incorrectly convicted defendant due to a misunderstanding of the law. See *Hartfield*, 2022 IL 126729, ¶ 50. If the jury treated the transcript as substantive evidence, *Betance-Lopez* supported that approach. If the jury treated the transcript as a listening aid, former IPI Criminal No. 3.20 and *Criss* supported that approach as well.

---

[4]While defendant claims that *Betance-Lopez* "is fairly characterized as an outlier," we have found no Illinois case law supporting that characterization. On the contrary, the committee notes to IPI Criminal No. 3.20B expressly adopt *Betance-Lopez*'s reasoning. Our research has revealed no negative treatment of *Betance-Lopez*.

¶ 64    Practically speaking, there is no dispute that the transcript and translation were accurate. Defendant stipulated to Aranda's qualifications and the accuracy of her translation of defendant's statement. Defendant has never identified any translation or transcription errors in the document the jury received. We cannot find that the trial court erred by providing the jury with what both parties agreed was an accurate translation and transcription of defendant's statement to police. Second-prong plain error did not occur in this case.

¶ 65    First-prong plain error did not occur either. As we will explain in the next section, the evidence was not closely balanced. There is no dispute that defendant sexually abused K.B. in defendant's apartment when K.B. was a young child. The parties disputed only how many times that occurred, the details of each instance of sexual abuse, and whether defendant told K.B. to keep his sexual abuse of her a secret. The jury convicted defendant on all charges. Accordingly, we find no plain error and will not reverse defendant's convictions based on the trial court's admission of the transcript of his statement to police.

¶ 66                    C. Sufficiency of the Evidence

¶ 67    Defendant next contends that the evidence was insufficient to prove him guilty of both charges. When reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the State, any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. McLaurin*, 2020 IL 124563, ¶ 22. We draw all reasonable inferences in the State's favor. *People v. Jones*, 2023 IL 127810, ¶ 28. We do not retry the defendant, and we will not substitute our judgment for that of the trier of fact on matters of witness credibility or the weight of the evidence. *McLaurin*, 2020 IL 124563, ¶ 22. We will reverse a conviction only if "the evidence is so

unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Jones*, 2023 IL 127810, ¶ 28.

¶ 68    As charged here, a defendant commits predatory criminal sexual assault if he is 17 years of age or older and commits an act of sexual penetration against a victim under 13 years of age. 720 ILCS 5/11-1.40(a)(1) (West 2014). "Sexual penetration" means any contact, however slight, between the sex organ of one person and the sex organ of another person. *Id.* § 11-.0.1. Evidence of ejaculation is not required to prove sexual penetration. *Id.* A defendant commits aggravated criminal sexual abuse if he is 17 years of age or older and commits an act of sexual conduct with a victim who is under 13 years of age. *Id.* § 11-1.60(c)(1)(i). "[S]exual conduct" is any knowing touching of any part of the body of a child under 13 years of age, either directly or through clothing, for the purpose of sexual gratification or arousal of the victim or the accused. *Id.* § 11-0.1.

¶ 69    There is no dispute that defendant was older than 17 and K.B. was younger than 13 at all relevant times. K.B. described defendant kissing her mouth and body, rubbing his penis against her, and penetrating her vagina while erect, *i.e.*, while sexually aroused. Her testimony alone was sufficient to establish the elements of both charges beyond a reasonable doubt. See *People v. Wells*, 2019 IL App (1st) 163247, ¶ 23. Moreover, in his statement to Prospect Heights police, defendant admitted rubbing his penis against K.B.'s vagina and intimately kissing K.B. when they were in his apartment. At trial, defendant denied any sexual conduct with K.B., but a reasonable jury could have given more weight to his confession to sexually abusing K.B. Defendant's statement established the elements of sexual conduct (see *People v. Calusinski*, 314 Ill. App. 3d 955, 961-62 (2000) (kissing is sexual conduct)) and sexual penetration (see *People v. W.T.*, 255 Ill. App. 3d 335, 347 (1994) (a defendant rubbing his penis against the victim's vagina constitutes sexual

penetration)). We do not see any element on which the State's evidence was "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." See *Jones*, 2023 IL 127810, ¶ 28.

¶ 70    Defendant's argument on this point is largely an attack on K.B.'s credibility. For example, defendant argues that K.B. did not report defendant's sexual abuse of her until several years after it occurred and that her trial testimony differed from her statement to Jusino. This argument is misplaced on appeal. In reviewing the sufficiency of the evidence, we do not evaluate the credibility of witnesses. *People v. Enis*, 163 Ill. 2d 367, 393 (1994).

¶ 71    Defendant points out that his daughter and stepdaughter denied that he was ever alone with K.B. However, the jury was not required to accept their testimony over K.B.'s testimony. Defendant himself described being alone with K.B. in his bedroom. It does not, as defendant claims, "strain credulity" that, at some point over the course of four years, K.B. would be alone with her uncle whom she visited often.

¶ 72    Defendant contends that his "statement should not, under the circumstances, alter this Court's analysis" because his statement was involuntary. But defendant's statement was part of the evidence at trial. When considering a challenge to the sufficiency of the evidence, we must consider "all the evidence adduced at trial in a light most favorable to the State." *People v. Edward*, 402 Ill. App. 3d 555, 564 (2010). Moreover, defendant does not directly challenge the voluntariness of his statement on appeal; he has not appealed the denial of his motion to suppress. He challenges only counsel's effectiveness in attempting to suppress his statement, and we reject that argument for the reasons set out below. Accordingly, we find that the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt.

¶ 73                    D. Ineffective Assistance of Trial Counsel

¶ 74    Defendant contends that trial counsel rendered ineffective assistance by failing to (1) assert additional grounds for the suppression of defendant's statement to police, (2) object to the admission of the transcript of his statement, and (3) object to Caponigro's testimony regarding defendant's statement.

¶ 75    To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must show (1) that counsel's performance was objectively unreasonable and (2) prejudice, *i.e.*, that there is a reasonable probability the result of the proceeding would have been different but for counsel's deficient performance. *People v. Patterson*, 2014 IL 115102, ¶ 81. We review claims of ineffective assistance under a bifurcated standard in which we defer to the trial court's findings of fact unless they are against the manifest weight of the evidence but review *de novo* the ultimate legal issue of whether counsel's actions support a claim of ineffective assistance. *People v. Ortega*, 2020 IL App (1st) 162516, ¶ 24.

¶ 76                              1. Motion to Suppress

¶ 77    Defendant contends that, in moving to suppress his statement to police, trial counsel failed to assert that defendant had a fourth-grade education, was illiterate in both Spanish and English, and was detained for approximately 14 hours without access to a telephone.

¶ 78    The decision whether to seek suppression of evidence and what theory of suppression to argue are generally matters of strategy that will not support a claim of ineffective assistance. *People v. Balark*, 2019 IL App (1st) 171626, ¶ 34; *People v. Rodriguez*, 312 Ill. App. 3d 920, 925 (2000). To establish prejudice resulting from counsel's failure to argue for the suppression of evidence, a defendant must show that (1) the motion to suppress would have been meritorious and

(2) there is a reasonable probability that the outcome of trial would have been different had the evidence been suppressed. *People v. Gayden*, 2020 IL 123505, ¶ 28.

¶ 79     When a defendant files a motion to suppress an inculpatory statement, the State must prove by a preponderance of the evidence that the statement was voluntary. *People v. Richardson*, 234 Ill. 2d 233, 254 (2009). " 'The test for voluntariness is whether the defendant made the statement freely, voluntarily, and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time he or she confessed.' " *People v. Woods*, 2020 IL App (1st) 162751, ¶ 78 (quoting *People v. Slater*, 228 Ill. 2d 137, 160 (2008)). In making this determination, a court must consider the totality of the circumstances surrounding the defendant's statement. *Id.* Those circumstances include (1) the defendant's age, intelligence, background, experience, mental capacity, education, and physical condition at the time of questioning, (2) the legality and duration of the detention, (3) the presence of *Miranda* warnings, (4) the duration of the questioning, and (5) any physical or mental abuse by police, including threats and promises. *Id.* (citing *Richardson*, 234 Ill. 2d at 253-54). In assessing these factors, a court " 'may consider evidence adduced at trial as well as at the suppression hearing.' " *Id.* (quoting *Richardson*, 234 Ill. 2d at 252).

¶ 80     Defendant contends that counsel should have argued that the length of his detention and lack of telephone access violated section 103-3(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-3(a) (West 2018)). At the time of defendant's arrest, section 103-3(a) provided that "[p]ersons who are arrested shall have the right to communicate with an attorney of their choice and a member of their family by making a reasonable number of telephone calls or in any other

reasonable manner" within a "reasonable time after arrival at the first place of custody."[5] *Id.* "The purpose of this provision is to allow a person being held in custody to contact family members to arrange for bail, representation by counsel and other procedural safeguards that the defendant cannot accomplish for himself while in custody." (Internal quotation marks omitted.) *People v. Salamon*, 2022 IL 125722, ¶ 92. A "violation of section 130-3(a) must be considered in the determination of voluntariness because it effectively prevents a suspect from exercising his or her constitutional rights prior to and during custodial interrogation." *Id.* ¶ 95. However, there is no "exclusionary rule when section 103-3(a) is violated." *Id.* ¶ 97. Rather, a violation of a defendant's rights under section 103-3(a) is part of the totality of the circumstances analysis we use to determine whether a custodial statement was voluntary. *Id.* ¶ 96.

¶ 81 Trial counsel did not render ineffective assistance by not arguing that Prospect Heights police violated section 103-3(a). Counsel had little reason to think such an argument would be successful in a motion to suppress defendant's statement. The version of section 103-3(a) in effect at the time did not render a 14-hour detention automatically unreasonable. 725 ILCS 5/103-3(a) (West 2018). Other factors courts have relied on in suppressing statements due to section 103-3(a) violations were not present in this case. For example, Prospect Heights police did not condition defendant's access to a telephone on his making an inculpatory statement. See *Haynes v. Washington*, 373 U.S. 503, 514 (1963); *People v. Sanchez*, 2018 IL App (1st) 143899, ¶ 73. Nothing in the record suggests that defendant invoked his right to counsel, was handcuffed in the holding cell or interview room, or exhibited signs of distress. See *Salomon*, 2022 IL 125722, ¶¶ 9-

---

[5]In 2022, section 103-3(a) was amended to provide that police must allow an arrestee to communicate with a lawyer and a family member as soon as possible following his arrest, and no later than three hours after arriving at the first place of custody. 725 ILCS 5/103-3.5(a-5) (West 2022).

11. Trial counsel's decision not to raise a section 103-3(a) argument was reasonable given the lack of evidence and case law supporting such an argument.

¶ 82 Defendant also argues that counsel should have introduced evidence that defendant had only "a fourth-grade education and could not read or write in Spanish, let alone English." The record is inconsistent as to whether defendant can read and write Spanish. Defendant's Presentence Investigation Report states that he "completed up to the fourth grade [in Mexico] but did not continue his education due to being demoted and not being able to read/write." However, during his statement to Prospect Heights police, defendant expressly stated that that he could read and write. Moreover, the Spanish-language *Miranda* form suggests that defendant is literate to at least some degree, as it contains his handwritten initials and signature. We cannot say that counsel was ineffective for not claiming that defendant is illiterate in Spanish when much of the evidence suggests that is not the case. Even if defendant is illiterate in Spanish, Duron and Caponigro explained defendant's *Miranda* rights verbally and his statement was entirely oral. That is, defendant was not asked to sign a written confession he could not read.

¶ 83 Additionally, the trial court was aware defendant cannot understand English. He testified through a Spanish interpreter. The fact that defendant may be illiterate in English is immaterial to the voluntariness of his statement. Prospect Heights police did not ask defendant to say, read, write, or understand anything in English.

¶ 84 Ultimately, we see no evidence of a language barrier so profound that defendant could not understand his *Miranda* rights or what was happening during his statement. On the contrary, the video of defendant's statement shows that he had no difficulty speaking with Duron in Spanish. Illinois courts have rejected the argument that a defendant's statement to law enforcement is

involuntary just because it involves translation between Spanish and English. See, *e.g.*, *People v. Joya*, 319 Ill. App. 3d 370, 380 (2001); *People v. Villagomez*, 313 Ill. App. 3d 799, 808-09 (2000). Therefore, counsel did not render ineffective assistance by deciding not to argue that a language barrier rendered defendant's statement involuntary when neither the evidence nor the law supported such an argument. See *People v. Mabry*, 398 Ill. App. 3d 745, 752-53 (2010) (trial counsel was not ineffective when counsel only asserted grounds for suppression that counsel believed to be reasonable).

¶ 85    The cases defendant cites involve factors that are not present in this case. For example, in *People v. Araiza*, 19 Ill. App. 3d 52 (1974), the court affirmed the suppression of the defendant's statement to police because he had been drinking alcohol and had not slept *in addition* to his lack of English. *Id.* at 55-56. *In re D.L.H., Jr.*, 2015 IL 117341, involved the statement of a juvenile who had been found unfit to stand trial. *Id.* ¶¶ 63-64. Also, neither of these cases involved claims of ineffective assistance of counsel.

¶ 86    The remaining factor defendant contends counsel should have raised is defendant's education, which apparently ended in the fourth grade in Mexico. A defendant's education is a relevant factor in the voluntariness analysis. *Woods*, 2020 IL App (1st) 162751, ¶ 78. However, defendant does not explain *how* his dropping out of school in fourth grade rendered him unable to understand his *Miranda* rights. A defendant's minimal education does not automatically render a confession involuntary. See, *e.g.*, *People v. Gonzalez*, 351 Ill. App. 3d 192, 201-02 (2004).

¶ 87    We acknowledge defendant's totality-of-the-circumstances argument that the factors discussed above, taken together, would have improved his argument in favor of suppressing his statement. But just because counsel's argument could have been *better* does not mean that counsel

was ineffective. See *Interest of D.M.*, 2020 IL App (1st) 200103, ¶ 35. Additionally, the trial court was already aware of most of these factors. The court knew that defendant was detained for approximately 14 hours, did not communicate with his family during that time, and did not speak English. We doubt that framing those same facts as a section 103-3(a) violation, or adding defendant's supposed illiteracy and limited education, would have caused the trial court to grant the motion to suppress instead of denying it. Practically speaking, we cannot see how defendant's literacy and education would outweigh a video depicting a thorough *Miranda* warning process and a calm, consensual interview, all in defendant's native language. See *People v. Ropland*, 2023 IL 128366, ¶ 28 (in assessing prejudice under *Strickland*, the question is whether it is reasonably likely that the result of the proceedings would have been different had counsel acted differently). Accordingly, we reject defendant's claims of ineffective assistance of counsel with respect to the suppression of his statement to police.

¶ 88                                   2. Transcript

¶ 89     Defendant next argues that counsel rendered ineffective assistance by not objecting to the admission of the transcript of his statement to police and by not proposing IPI Criminal No. 3.20.

¶ 90     In general, decisions regarding " 'what matters to object to and when to object' " are matters of trial strategy. *People v. Stewart*, 2018 IL App (3d) 160205, ¶ 28 (quoting *People v. Pecoraro*, 175 Ill. 2d 294, 327 (1997)). Similarly, counsel's decisions about what jury instructions to propose are generally matters of trial strategy. *People v. Bruemmer*, 2021 IL App (4th) 190877, ¶ 53. We give great deference to counsel's strategic decisions and evaluate counsel's "performance from his perspective at the time, rather than through the hindsight." *People v. Perry*, 224 Ill. 2d 312, 344 (2007).

¶ 91    We find that counsel's decision not to object to the admission of the transcript of defendant's statement was reasonable. Aranda is a certified translator, and defendant has never identified any errors in the translation or transcription Aranda prepared. Illinois law supported the transcript's admission as substantive evidence. See *Betance-Lopez*, 2015 IL App (2d) 130521, ¶¶ 30-33. We see no plausible basis on which counsel could have objected to the admission of the transcript.

¶ 92    While counsel could have proposed IPI Criminal No. 3.20, the version of that instruction in effect at the time of defendant's trial did not address a non-English statement that had been translated into English. It was reasonable for counsel not to propose IPI Criminal No. 3.20 given its apparent inapplicability to this situation and the confusion it may have caused. "[C]ounsel's decision as to which jury instruction to tender can support a claim of ineffective assistance of counsel only if that choice is objectively unreasonable." *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 97. Defendant has failed to establish that counsel's decisions regarding the transcript of his statement were objectively unreasonable, so we reject this claim of ineffective assistance.

¶ 93                                   3. Caponigro's Testimony

¶ 94    Finally, defendant contends that trial counsel rendered ineffective assistance by failing to object to Caponigro's testimony summarizing defendant's statement. According to defendant, Caponigro's testimony was a cumulative, hearsay recounting of what Duron, the translating officer, told Caponigro defendant was saying. As stated above, counsel's decisions as to evidentiary objections are generally matters of trial strategy. *Stewart*, 2018 IL App (3d) 160205, ¶ 28.

¶ 95    We acknowledge that Caponigro's testimony summarizing defendant's statement, which Caponigro understood only because of Duron's translation, was problematic. "[A] person conversing with a third person through an interpreter is [n]ot qualified to testify to the other person's statements because he knows them only through the hearsay of the interpreter." *People v. Torres*, 18 Ill. App. 3d 921, 928-29 (1974); see also *Villagomez*, 313 Ill. App. 3d at 809 ("[U]nless the person who acts as the interpreter testifies as to the taking of the statement, the statement is inadmissible hearsay.").

¶ 96    However, trial counsel's decision not to object to Caponigro's testimony did not prejudice defendant. The jury would receive a translated version defendant's statement regardless of whether Caponigro testified. The trial court had already denied defendant's motion to suppress his statement and had already admitted the transcript of the statement. Even if counsel had objected and the trial court had barred Caponigro from recounting Duron's translation of defendant's statement, we cannot see how the outcome of trial would have been different. The jury would have received the substance of defendant's statement in any event. See *Torres*, 18 Ill. App. 3d at 929 (explaining that "even if hearsay testimony is properly admitted, reversal is not warranted where the same matter has been proved by properly admitted evidence.").

¶ 97    Defendant argues that Caponigro's testimony prejudiced him because Caponigro added his own interpretations of defendant's statement. For example, defendant claims that Caponigro testified defendant said K.B. was "hot, like excited" and "pulled down her own pants and underwear" when defendant did not actually say that. Similarly, defendant claims that "Caponigro's description of [defendant] massaging K.B.'s vagina with his penis was Duron's interpretation of what Suastegui implied in the videotape." But according to the transcript—which

defendant has never disputed is accurate—that is indeed how defendant described the incident in his bedroom. Without prompting from the officers, defendant stated that he "had [his] part outside" when he was "hugging" K.B. "and she was very excited" and "hot." When Duron suggested that defendant put his penis on K.B.'s vagina without penetrating her, defendant responded that was "[e]xactly" correct, like "[a] massage." Caponigro's recounting of defendant's statement was accurate in substance and we cannot see how that testimony prejudiced defendant within the meaning of *Strickland*. Accordingly, we reject this claim of ineffective assistance of counsel.

¶ 98                                    III. CONCLUSION

¶ 99     For the foregoing reasons, we affirm defendant's convictions.

¶ 100   Affirmed.